No. 47,258

State of Kansas, *Appellee*, v. Albert Wilson, *Appellant*.

(523 P. 2d 337)

Opinion filed June 15, 1974.

*Rodney H. Busey,* of Arvin, Arvin and Busey, Chartered, of Wichita, argued the cause and was on the brief for the appellant.

*Larry D. Kirby,* Assistant District Attorney, argued the cause, and *Vern Miller,* Attorney General, *Keith Sanborn,* District Attorney, and *Clifford L. Bertholf,* Assistant District Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

Kaul, J.: The defendant, Albert L. Wilson, appeals from convictions of aggravated assault (K. S. A. 1973 Supp. 21-3410) and felony possession of a firearm (K. S. A. 1973 Supp. 21-4204).

The charges against defendant stemmed from an altercation and shooting incident which occurred in and nearby the Carriage Inn Tavern in Wichita during the evening of June 9, 1972.

The evidence established that Joy Currie, employed as a barmaid at the tavern, was an acquaintance of officer Breedlove of the Wichita Police Department. During the evening in question defendant made an appearance at the tavern which caused Joy Currie to believe trouble would ensue. After defendant left the tavern Joy Currie telephoned officer Breedlove who was off-duty at the time. Breedlove, out of uniform, arrived at the tavern shortly after 11 p. m. Soon after Breedlove's arrival, defendant made a second appearance at the tavern and was pointed out to Breedlove by Joy. Breedlove proceeded to a telephone in the rear of the tavern to call the police department. As Breedlove was dialing defendant approached and pointed a gun at him. Ensuing events are described by Breedlove in his testimony which is narrated as follows:

". . . When I observed him pointing the firearm at me I dropped the phone, and there's a door that is just right there which leads back into the pool area. I dropped the phone, jumped back in there, pulled my revolver, jumped back out, yelled police officer, drop your weapon and he turned and ran out the south door, myself right behind him out of the south main entrance of the Carriage Inn. I ran after him. Upon going out the south door, I heard a report and saw a muzzle flash. I kind of grabbed hold of the sides of the frame of the door and pulled myself out, jumped back out and returned fire, and by that time he was already around the corner west from the entrance. I ran around to the west side of the building and stopped there. I stuck my head around the corner and observed a '59 white Chevrolet parked on the west side of the building and as I stuck my head around the corner I received approximately two more rounds from the gun which appeared to come from the front seat of the car, muzzle flash coming out of the car itself. Bullets hit the wall and dust fragments got in my eye. The defendant fired at me three or four times after he fired from the car. The car started up and he was laying down in the front seat evidently with his head pointing toward me, backed up the car and started to leave the area. I jumped out and emptied my service revolver into the car. The car did not stop. I tried to get the tag number; however, I couldn't because it was dark. I ran back to the Carriage Inn, picked a nickel off the ground and called the police department and gave them a description of the subject that tried to harm me and the direction of travel, type of car and everything. . . ."

Three days later, on June 12, 1972, defendant was arrested at his house by Sergeant Nelson and Captain Williamson of the police department. His rights, as delineated in *Miranda v. Arizona*, 384 U. S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, were immediately read to defendant from a typed card and when asked if he understood defendant replied in the affirmative. In a close sequence of events following his arrest defendant inquired whether the officers had a

search warrant and, further, whether there would be a "head knocking over this deal with the cop." After the officers and defendant were seated in the police car a conversation took place relating to defendant's gun. In this connection, Captain Williamson's testimony appears in the record as follows:

"A. . . . as we started to pull away I asked him where the gun was. He says, 'The river got it.' and I said, 'Where at in the river?' He says— didn't reply to me. Traffic was going, people all over the place. Sergeant Nelson asked him, 'Where is the gun at?' He says, 'It's in the river. I hope it's deep.'

"Q. And did you say anything then after he said, 'In the river. I hope it's deep?'

"A. Yeah, because I asked him again where it was at. He said, 'I don't know. I just hope it's deep.'"

Defendant was charged with aggravated assault on a law enforcement officer under K. S. A. 1973 Supp. 21-3411. Apparently, because officer Breedlove was not in uniform at the time, defendant was convicted of aggravated assault under K. S. A. 1973 Supp. 21-3410. With one exception mentioned hereafter, the instructions submitted by the trial court are not included in the record on appeal.

Defendant briefs and argues three points on appeal. He first contends the trial court erred in admitting the statements made to the arresting officers concerning the whereabouts of his gun. The trial court first heard evidence relating to the matter outside the presence of the jury and determined defendant's statements were admissible. Thereafter, the officers were allowed to testify in the presence of the jury. Defendant admits the Miranda warning was given and acknowledged by him prior to his inculpatory statements. Defendant's argument seems to be that the arresting officers should have done more than merely give him the Miranda warning and should have asked him specifically if he wanted to exercise any of his rights after the warning had been given. This argument is untenable. Defendant gave an unequivocal "Yes" response when asked if he understood his rights. He makes no claim that he was coerced or that his statements that the gun was in the river were given otherwise than voluntarily.

Defendant further argues that his questions concerning a search warrant should be interpreted as an attempt to invoke his right to remain silent. We see no basis for arriving at defendant's suggested conclusion. The statements concerning the whereabouts of the

gun came about in the course of a conversation between defendant and the arresting officers and, as we read the record, were a part of a continuing chain of conversation freely and intelligently entered into by defendant. The statements in question are in context quite similar to defendant's statements found to be admissible in *State v. Porter,* 201 Kan. 778, 443 P. 2d 360, cert. den. 393 U. S. 1108, 21 L. Ed. 2d 805, 89 S. Ct. 919. In *Porter* the arresting officers advised the defendant prior to the giving of any Miranda warning that they had come for his pistol, the defendant's response was "You can't have my pistol." Porter's exclamation was considered in the light of the Miranda decision and even though Porter had been given no warning at the time, we held:

"Incriminating statements or admissions which are made freely and voluntarily without threat of force or compulsion are not barred under the rules set forth in *Miranda v. Arizona,* 384 U. S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, but are admissible in evidence." (Syl. ¶ 2.)

Concerning the admissibility of spontaneous statements we would further direct attention to our decisions in *State v. Miles,* 213 Kan. 245, 515 P. 2d 742; *State v. Hill,* 211 Kan. 239, 505 P. 2d 704; and *State v. Law,* 203 Kan. 89, 452 P. 2d 862.

The record discloses the trial court carefully considered the circumstances under which defendant uttered the statements in question. In this connection we said in *State v. Melton,* 207 Kan. 700, 486 P. 2d 1361:

". . . The real issue in confession cases is the validity of the waiver of the accused's Fifth and Sixth Amendment rights, a fact question to be determined in the light of the totality of the circumstances. . . ." (p. 710)

We held in *Melton* that if there is substantial competent evidence to support the trial court's finding in this regard such findings will not be disturbed on appellate review.

In the instant case we believe the statements in question must be considered as spontaneous and, furthermore, there *is* competent evidence to support a finding that defendant had voluntarily and intelligently waived his rights under the Fifth and Sixth Amendments to the Constitution of the United States.

Defendant claims error in the admission of evidence of a previous felony conviction of burglary and larceny. The trial court admitted the testimony on the basis that it went to prove the firearm possession count. Defendant, prior to trial, offered to stipulate that he had a previous felony conviction and presented a motion to the trial court that the prosecuting attorney be restrained from

submitting evidence pertaining thereto. The prosecuting attorney refused to so stipulate and insisted on presenting the evidence. Defendant claims reversible error in this regard. The state responds that there is no law that requires any party to stipulate to any fact in a lawsuit and, further, that even though the stipulation had been entered into, the fact of a prior conviction had to be presented to the jury since it was a necessary element of the firearm offense defined in K. S. A. 1973 Supp. 21-4204. This court has often held that evidence otherwise relevant in a criminal prosecution is not rendered inadmissible simply because it may show a crime other than that charged. (*State v. Calvert*, 211 Kan. 174, 505 P. 2d 1110; *State v. Pierce, et al.*, 208 Kan. 19, 490 P. 2d 584; and *State v. Crowe*, 207 Kan. 473, 486 P. 2d 503.) It is an established rule of law that an admission by a defendant does not prevent the state from presenting separate and independent proof of the fact admitted. (*Bizup v. People*, 150 Colo. 214, 371 P. 2d 786, cert. den. 371 U. S. 873, 9 L. Ed. 2d 112, 83 S. Ct. 114; and *Parr v. United States* [5th Cir. 1958], 255 F. 2d 86, cert. den. 358 U. S. 824, 3 L. Ed. 2d 64, 79 S. Ct. 40.)

The prevailing rule in this regard is stated in Wharton's Criminal Evidence [12th Ed. 1972 Cumulative Supp.], Confessions and Admissions, § 399:

"The making of an admission by the defendant does not bar the prosecution from proving the fact independently thereof as though no admission had been made, particularly since facts when voluntarily admitted often lose much of their probative force in the eyes of the jury." (p. 63.)

To the same effect the rule is stated in 31A C. J. S., Evidence, § 299:

"A party is not required to accept a judicial admission of his adversary, but may insist on proving the fact." (p. 766.)

In the recent criminal case of *Arrington v. State*, (Fla. 1970), 233 So. 2d 634, the Supreme Court of Florida pointed out that an offer to stipulate remains merely an offer unless accepted by the prosecution. The Florida court declared its position on the subject by adopting language quoted from *The People v. Speck*, 41 Ill. 2d 177, 242 N. E. 2d 208, as follows:

" ' "It has never been held that the state is barred from proving a fact because the defendant offers to admit it, but, on the contrary, the rule is that when a trial is upon a plea of not guilty, the state is permitted to go ahead and introduce its full proof of the crime charged in the indictment." ' " (pp. 636, 637.)

See, also, *The People v. Scheck*, 356 Ill. 56, 190 N. E. 108, 91 A. L. R. 1472, and 73 Am. Jur. 2d, Stipulations, § 18, p. 557.

Finally, defendant makes a technical objection to the trial court's instruction pertaining to the scope of the jury's consideration of evidence of a previous conviction. In this connection the record reflects that the state, rather than the defendant, objected to the instruction as it was given at the trial. The state's objection was based on the ground that the instruction limited jury consideration of the previous conviction to the firearm possession count. The state contended the instruction should have been broadened to allow the jury to consider the evidence for purposes enumerated in K. S. A. 60-455. Defendant's counsel insisted the instruction be submitted as drafted by the trial court. Under such circumstances, defendant is foreclosed from changing his position and challenging the instruction for the first time on appeal. (*State v. Little*, 201 Kan. 94, 439 P. 2d 387.)

The judgment is affirmed.