(580 P.2d 90)

No. 49,655

STATE OF KANSAS, *Appellant,* v. ROBERT L. BAKER, *Appellee.*

Opinion filed June 16, 1978.

*Robert Sandilos* and *J. Larry Linn,* Assistant District Attorneys, *Vern Miller,* District Attorney, and *Curt T. Schneider,* Attorney General, for appellant.

*Mark Wetta,* of Smith, Shay, Farmer & Wetta, of Wichita, for appellee.

Before SPENCER, P.J., REES and MEYER, JJ.

REES, J.: This is an appeal by the State from a suppression order. We reverse.

The question before us solely concerns whether there was a waiver after defendant had been advised of his *Miranda* rights and had acknowledged his understanding of them.

Defendant was charged with attempted burglary. The case came on for trial. A jury was selected. Before it was impaneled or sworn, a *Jackson v. Denno* hearing was held to determine the admissibility of statements made by defendant to the police.

The first witness called at the hearing was Officer Williams of the Wichita police department. He testified that at approximately 4:25 a.m. on the morning of August 16, 1977, he responded to a call at the Madison Square Shopping Center. Upon arriving he observed a black male on the roof of a building. Seeing Williams, the suspect ran across the top of the building to the opposite side. Defendant and another man were arrested as they came down from the roof.

After ordered by Williams to lie on the ground, defendant was searched, handcuffed, and read his *Miranda* rights. Williams asked the defendant if he understood his rights and received an affirmative answer. Williams then placed the defendant in the back seat of a police car and began to question him. The conversation was described in part as follows:

"Q. And would you please tell us what the condition—the location of the defendant was at the time you had this conversation?

"A. Well, he was sitting in the passenger seat handcuffed, hands were handcuffed behind his back. And I asked him if he could tell me what was he doing on top of the roof. At first he was very hesitant about answering the questions. And eventually he told me that he and the other black male on top of the roof were on the roof about twenty to thirty minutes. . . ."

It was the further testimony of Williams that defendant then gave an oral confession that he and his companion were attempting to burglarize the shopping center. After examination and cross-examination, the court asked Williams the following questions:

"THE COURT: I need to ask a couple to clear up a thing.

"Officer, to go back to where you said that you advised the defendant of his rights and he told you he understood them: I believe you also testified that he at first was hesitant in answering questions. Is that what you said?

"THE WITNESS: Yes, sir, after we got back to the police car he was hesitant about answering any questions I asked him pertaining to the possibility of a burglary.

"THE COURT: Well, did he ever tell you before you asked him any questions that he would answer questions?

"THE WITNESS: No, sir, I don't recall.

"THE COURT: So after you read him his rights and he told you he understood them, you did not ask him if he was willing to go ahead and answer questions notwithstanding the fact he didn't have to?

"THE WITNESS: I asked him if he had anything to tell me, you know, if he had anything he'd like to tell me pertaining to the possibility of burglary.

. . . .

"THE COURT: Well, I guess what I'm trying to establish, Officer, for the record, the law of Miranda requires the officer to advise the person of his rights, as you know. It then requires that he acknowledge that he understands them, which you testified took place. It then requires a waiver by the defendant, an affirmative waiver in which the officer asks the question in this fashion or something like this: Having those rights in mind, are you willing to answer questions.

"Did you ever ask him that question before you asked him any questions about the burglary?

"THE WITNESS: No, sir, I didn't. I just advised him of his rights and asked him if he had anything he would like to tell pertaining to the burglary.

"THE COURT: I have no other questions."

The only other witness at the hearing was Detective Landon, who had interviewed defendant at the police station after his arrest. Landon also advised defendant of his *Miranda* rights by reading from a sheet. After each right was read, he asked the defendant if he understood that right. Defendant stated he understood each of the rights. Following the four *Miranda* rights, there appeared on the sheet the following sentence: "I have read this statement of my rights and understand what my rights are." Defendant read the sheet and again advised Landon he understood his rights and signed the sheet. Landon then proceeded to question the defendant and obtained an oral confession. After examination and cross-examination, the court questioned Landon as follows:

"THE COURT: After you finished reading him the rights and he read them and advised you he understood them and signed his name, what was the—did you, before you asked him any questions about what he was in custody for, ask him whether or not he was willing to answer questions pertaining to what he was in custody for or waive his rights in answering questions?

. . . .

"THE WITNESS: Well, I had Mr. Baker fill—I read him his Miranda rights. Then I filled out an interview or a personal history sheet.

"THE COURT: After you read the Miranda rights?

"THE WITNESS: Yes, sir. And then next after I finished the personal history sheet, I advised him that I had talked to Floyd Phillips [the codefendant]. And I asked him to tell me what was, you know, his side of the story. I didn't elaborate on the Miranda warning.

"THE COURT: Did you ever ask him whether he wished to, with his rights in mind that you had read to him, did he wish to answer any questions?

"Do you follow what I'm asking?

"THE WITNESS: Yes, sir, I'm trying to remember. I don't recall.

"THE COURT: I have no other questions."

Following the testimony of Officer Williams and Detective Landon, the court ruled and engaged in the following conversation with the prosecutor:

"THE COURT: The basic element of waiver having not been established, the evidence is not admissible.

"MR. WALLER: Well, Your Honor, I believe what the court is leaning toward is the old, well, portion: Therefore, having these rights in mind is it now your desire to talk.

"I don't believe that's required in the Miranda decision.

"THE COURT: That's one form of it, there has to be an affirmative waiver.

"MR. WALLER: I believe that an affirmative waiver can be constituted when the individual starts talking, Your Honor.

"THE COURT: True, if he starts talking, but not if he starts answering questions.

. . . .

"THE COURT: Well, there is no question whatever that the defendant was very fairly and very fully advised of his rights. But that is not all that is necessary to make his testimony admissible into evidence. First you advise someone of his rights, for example: You don't have to answer any questions. You don't then start asking questions until you find out if he is willing to waive that right. That's the point. Otherwise, there is no point in giving him that advice in the first place. And the Supreme Court has held many times there must be a voluntary waiver."

We conclude that the trial court's consideration of the question of defendant's waiver of his *Miranda* rights was unduly restrictive. We agree that an affirmative waiver of *Miranda* rights must be found before a subsequent confession elicited upon custodial interrogation may be admissible evidence in the State's case in chief. However, where a defendant who has been advised of his rights and has acknowledged his understanding of those rights proceeds to voluntarily answer questions, such waiver may be implied under the facts of a particular case.

The decision in the United States Supreme Court in *Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602 (1966), makes it clear that the State must prove the necessary warnings were given a criminal defendant and the defendant waived those rights before a confession given during custodial interrogation may be admitted at trial. In regard to this case, the essence of the *Miranda* decision is as follows:

". . . Opportunity to exercise these rights must be afforded to him throughout the interrogation. After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him." (384 U.S. at 479.)

A substantial burden is placed upon the State to prove the voluntariness of a confession where obtained during custodial interrogation without the presence of counsel.

"If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. . . ." (384 U.S. at 475.)

Evidence to meet this burden was discussed as follows:

"An express statement that the individual is willing to make a statement and does not want àn attorney followed closely by a statement could constitute a waiver. But a valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained. A statement we made in Carnley v. Cochran, 369 U S 506, 516, 8 L ed 2d 70, 77, 82 S Ct 884 (1962), is applicable here:

" 'Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver.' " (384 U.S. at 475.)

Cases following *Miranda* have generally held that even though a valid waiver of *Miranda* rights cannot "be presumed from the silence of the accused after warnings are given," under the circumstances of a particular case, waiver may be implied where after having been advised of his rights and understanding of them has been acknowledged, the defendant answers questions put to him by law enforcement officers.

In *United States v. Hilliker,* 436 F.2d 101 (9th Cir. 1970), the defendant was arrested upon a charge of car theft. The arresting officer informed the defendant of his *Miranda* rights and the defendant replied that he understood those rights. A few minutes later, after the defendant had been placed in the rear seat of a police car for transportation to the police station, he admitted he had taken the car. There was no intensive or intimidating interrogation or other evidence of coercion. In affirming the conviction and the use of the oral confession, the Ninth Circuit said that "[c]ourts must determine the validity of a waiver of *Miranda* rights on an *ad hoc* basis looking carefully to the particular circumstances of the case." (p. 102.) In discussing *Miranda,* the court said in part:

". . . Even though the Supreme Court stated that '[a]n express statement that the individual is willing to make a statement and does not want an attorney followed closely by a statement could constitute a waiver[,]' *Miranda,* 384 U.S. at 475, 86 S.Ct. at 1628, it did not say that these are the only circumstances under which a valid waiver may be found. While the Court, in *Miranda* emphasized that a valid waiver will not be 'presumed' simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained, we think a waiver may be implied where warranted under the facts of a particular case." (p. 102.)

The court concluded that, although at the time of the confession defendant had not expressly stated that he waived his *Miranda* rights, "the described circumstances indicate that he did, know-

ingly, intelligently, and voluntarily, waive those rights at the time he first admitted he had taken the automobile." (p. 103.)

In *United States v. Mix,* 446 F.2d 615 (5th Cir. 1971), the defendant was arrested and charged with unlawful possession of unregistered firearms. The investigating officer gave the defendant a complete *Miranda* warning, at the end of which he asked the defendant if he understood his rights and received an affirmative reply. The investigator then proceeded to take the defendant's fingerprints and at the same time questioned him. Defendant made incriminating statements which were introduced against him at trial. On appeal, defendant argued the government's evidence established only that the defendant was given the *Miranda* warning and comprehended his rights but that the government failed to prove the defendant waived those rights prior to making a statement. In affirming the conviction, the Fifth Circuit said:

"In the case now at bar, Schmidt [the investigator] gave complete advice to appellant as to his rights before any questioning occurred. Before he made the inculpatory statements involved, Mix was asked if he understood his rights and responded that he did understand them. It was not necessary for Agent Schmidt to run down the list of rights available to appellant seriatim and then to inquire as to each whether appellant waived that right. We are of the clear view that the government adequately established the voluntariness of the statements made to Agent Schmidt by Mix on September 5, 1969, and that accordingly the district judge did not err when he admitted them in evidence at trial." (p. 621.)

Other cases where a waiver of *Miranda* rights has been implied from the circumstances of the case, in absence of an express waiver, include *United States v. Moreno-Lopez,* 466 F.2d 1205 (9th Cir. 1972); *United States v. Montos,* 421 F.2d 215 (5th Cir. 1970); *United States v. Pheaster,* 544 F.2d 353 (9th Cir. 1976); and *Blackmon v. Blackledge,* 541 F.2d 1070 (4th Cir. 1976).

In *State v. Wilson,* 215 Kan. 28, 523 P.2d 337 (1974), the defendant was arrested for having shot at a police officer. The *Miranda* rights were immediately read to him. When asked if he understood his rights, defendant replied in the affirmative. Defendant then asked the police if they had a search warrant and, further, whether there would be a "head knocking over this deal with the cop." (p. 30.) The police then placed defendant in the back of a police car. On the way to the police station, one of the officers asked defendant where his gun was. Defendant replied, "The river got it." (p. 30.) The trial court, after a *Jackson v. Denno* hearing, permitted the police to testify as to the defendant's

statement concerning the location of the gun. Defendant argued on appeal that the trial court erred in admitting the statement. The Supreme Court said in part:

". . . Defendant admits the Miranda warning was given and acknowledged by him prior to his inculpatory statements. Defendant's argument seems to be that the arresting officers should have done more than merely give him the Miranda warning and should have asked him specifically if he wanted to exercise any of his rights after the warning had been given. This argument is untenable. Defendant gave an unequivocal 'Yes' response when asked if he understood his rights. He makes no claim that he was coerced or that his statements that the gun was in the river were given otherwise than voluntarily." (p. 30.)

The State has a heavy burden to demonstrate that a defendant knowingly and intelligently waived his privilege against self-incrimination and his right to counsel before a confession obtained during custodial interrogation may be admitted at trial. A valid waiver of *Miranda* rights cannot be presumed simply from the silence of the accused after the giving of a *Miranda* warning or from the fact that a confession was eventually obtained. *Miranda v. Arizona,* supra, at p. 475. However, the courts must look at the circumstances of each individual case to determine the validity of a waiver of *Miranda* rights. *United States v. Moreno-Lopez,* supra, p. 1206. *Miranda* does not hold that an express declination of the right to counsel is an absolute from which, and only from which, a valid waiver can flow. *Bond v. United States,* 397 F.2d 162 (10th Cir. 1968). A waiver of *Miranda* rights need not be express but may be implied from the circumstances of the individual case. *United States v. Hayes,* 385 F.2d 375, 377-378 (4th Cir. 1967); *United States v. Hilliker,* supra, p. 102; *United States v. Moreno-Lopez,* supra, p. 1206. A valid waiver of *Miranda* rights may be implied under some circumstances where a defendant, who has been advised of his *Miranda* rights and has acknowledged his understanding of them, freely answers questions put to him by law enforcement officers. *State v. Wilson,* supra; *United States v. Hilliker,* supra; *United States v. Mix,* supra.

We do not hold that the giving of a *Miranda* warning to the criminal defendant and acknowledgment of his rights by the defendant in all cases validates a subsequent confession elicited during custodial interrogation. Such a holding would clearly contravene the mandatory language of *Miranda v. Arizona,* supra. We do hold that the mere absence of an express waiver of

*Miranda* rights by a defendant, who has been advised of those rights and has acknowledged his understanding of them, will not in all cases preclude the use of a subsequent confession obtained during custodial interrogation.

On the basis of the record before us, we do not and cannot hold as a matter of law that this defendant waived his *Miranda* rights. It may be that the State will be unable to carry its heavy burden of showing knowing and intelligent waiver. Such a determination is for the trial court upon remand for a new *Jackson v. Denno* hearing consistent with this opinion.

Reversed with direction for further proceedings in accord with the views expressed.