No. 49,648

STATE OF KANSAS, *Appellee*, v. CALVIN BRUCE HIGDON, *Appellant*.

(585 P.2d 1048)

Opinion filed October 28, 1978.

*Edward J. Hund*, of Smith, Shay, Farmer & Wetta, of Wichita, argued the cause and was on the brief for the appellant.

*Stuart W. Gribble*, assistant district attorney, argued the cause, and *Curt T. Schneider*, attorney general, and *Vern Miller*, district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, C.J.: This is an appeal in a criminal action from a jury verdict which found Calvin Bruce Higdon (defendant-appellant) guilty of one count of felony murder (K.S.A. 21-3401), one count of aggravated kidnapping (K.S.A. 21-3421), one count of aggravated robbery (K.S.A. 21-3427), and one count of rape (K.S.A. 21-3502).

The appellant contends the trial court erred in admitting his confession and in refusing to instruct on the lesser included offense of simple kidnapping. He also questions whether venue and the *corpus delicti* of the crime of rape were properly established.

On the morning of June 23, 1977, at approximately 5:30 Tammy Kershner said good-bye to her husband and was driven to work at the Pit Stop Self-Service Gas Station at 2348 South Broadway, Wichita, Kansas, by a girl friend. She was last seen at work in the gas station by a customer at 7:15 that morning. Donald L. Bales, owner of the station and sales manager for the Klepper Oil Company, arrived at 8:00 a.m. and discovered

Tammy was gone and $465.13 was missing from the station. Her nude body was recovered two days later in a shallow grave in Sumner County, Kansas. She had been shot three times in the head.

At 9:30 a.m. on June 23, 1977, the appellant purchased a .22 hi-standard revolver from his friend Ronald Cook for $100. The two then went for target practice in the appellant's sister's car. Mr. Cook testified that while riding around he noticed a brown suede billfold and dark-colored moneybag on the floor of the car. The billfold contained Tammy Kershner's driver's license. In response to questioning the appellant admitted robbing Tammy Kershner at the Pit Stop gas station. The two then proceeded to Mr. Cook's house where they burned the billfold and moneybag in the backyard in order to get rid of the evidence. The appellant also gave Mr. Cook several rings which were subsequently identified as the deceased's wedding bands and then spent the afternoon paying off debts he owed on one of his cars.

Mr. Cook turned the rings over to the police the next afternoon on June 24, 1977. The appellant, who had been previously questioned in the case and released, was arrested at 1:20 a.m. on June 25, 1977. He was taken to the Wichita Police Department with his sister, Rebecca Taylor, and his girl friend, Billie Kay Brown. The police recovered over $100 from the appellant's sock upon his arrest.

Prior to questioning, officers advised the appellant of his rights and he signed a written form. He then gave numerous stories to the police in which he successively indicated more involvement in the crime. Eventually the appellant confessed to the murder of Tammy Kershner and accompanied police officers to her grave in a wooded grove near Wellington, Kansas, in Sumner County, and the shed where he shot the victim. He stated he "sexually assaulted" Tammy Kershner before killing her. The appellant also took the officers to an abandoned railroad abutment where he had disposed of the gun used to kill the deceased, and he showed them a Salvation Army drop box in the area of 1014 West 31st South in Wichita where he had placed her clothing. He then returned to the police station with the officers where he gave a taped confession of the events of the crime.

Prior to his trial the appellant unsuccessfully filed a motion to suppress his statements and taped confession. He was convicted

of felony murder, aggravated kidnapping, aggravated robbery, and rape of Tammy Kershner. His motion for new trial was denied and appeal has been duly perfected.

The appellant first contends his confession was involuntarily given. After being advised of his *Miranda* rights the appellant told the police he had robbed and kidnapped Tammy Kershner. He said he released her south of Wellington, Kansas, and did not harm her. After being assured his girl friend and sister had been released the appellant then confessed to the murder of Tammy Kershner and took police officers to her grave.

As a general rule uncoerced statements made to police officers by a defendant who has been given warning as to his constitutional rights are admissible as evidence at his trial. *State v. Cook,* 224 Kan. 132, 137, 578 P.2d 257 (1978); *State v. Coe,* 223 Kan. 153, 161, 574 P.2d 929 (1977), and cases cited therein. To be admissible, a confession or extrajudicial statement must have been freely and voluntarily given. When a trial court conducts a full pretrial hearing on the admissibility of an extrajudicial statement by the accused, determines the statement was freely, voluntarily, and knowingly given and admits the statement into evidence at the trial, the appellate court should accept that determination if it is supported by substantial competent evidence. *State v. Treadwell,* 223 Kan. 577, 578-79, 575 P.2d 550 (1978); *State v. Freeman,* 223 Kan. 362, 372, 574 P.2d 950 (1978); *State v. Coop,* 223 Kan. 302, 309, 573 P.2d 1017 (1978).

Here the appellant was afforded two separate *Jackson v. Denno* hearings. Each district court judge came to the independent conclusion the appellant's statements were freely and voluntarily given. Looking at the totality of the circumstances the appellant was neither threatened nor coerced. He successively implicated himself in degrees for all of the crimes charged over an extensive time period.

The appellant also asserts there was not a full waiver of his rights. He attacks the Waiver of Rights form used by the Wichita police. It provides:

"Before we ask you any questions, you must understand your rights.

"You have the right to remain silent.

"Anything you say can be used against you in court.

"You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning.

"If you cannot hire a lawyer, the court will appoint one for you.

"If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.

"I have read this statement of my rights and I understand what my rights are."

Specifically the appellant argues because he was never asked if he wished to waive his rights, waiver did not take place. This argument lacks merit. The Kansas Court of Appeals recently addressed this issue in *State v. Baker,* 2 Kan. App. 2d 395, 580 P.2d 90 (1978). There the court held:

"[T]he mere absence of an express waiver of *Miranda* rights by a defendant, who has been advised of those rights and has acknowledged his understanding of them, will not in all cases preclude the use of a subsequent confession obtained during custodial interrogation." (pp. 401-402.)

See also *State v. Wilson,* 215 Kan. 28, 30, 523 P.2d 337 (1974).

Here the appellant does not assert he misunderstood any of his rights or he was denied the opportunity to exercise those rights. He read the form and after he was given the opportunity to have it explained to him, he voluntarily signed it. The record amply reflects the appellant knowingly and voluntarily waived his rights and participated freely in the conversation with the officers.

The appellant next contends the state failed to establish the *corpus delicti* of the crime of rape. We have often stated that any material facts, including the *corpus delicti* itself, may be proved by direct testimony or by indirect or circumstantial evidence or a combination of both. No exclusive mode of proof of the *corpus delicti* is prescribed by the law. *State v. Pyle,* 216 Kan. 423, 432, 532 P.2d 1309 (1975); see also *State v. Johnson,* 223 Kan. 185, 573 P.2d 595 (1977); *State v. Johnson,* 220 Kan. 720, 723, 556 P.2d 168 (1976). Moreover, the *corpus delicti* in a rape case may be proved by extrajudicial admissions and circumstantial evidence. *State v. Cardwell,* 90 Kan. 606, 135 Pac. 597, 1916B L.R.A. 745 (1913); Annot., 40 A.L.R. 460, 461 (1926).

Here the evidence, independent of the appellant's confession, established the *corpus delicti* of the crime of rape. Dr. Eckert testified there was acid phosphatase, a male hormone found in seminal fluid, present in the vaginal walls of the victim. He also stated if she had been alive her normal movements and hygiene would have removed the acid on a regular basis. The victim's body was found nude when recovered from the grave, and the clothing was placed in a different location from the grave. There

were lacerations and cuts above the pubic area and on the breasts. Thus, in the case at bar there was sufficient competent evidence from which the *corpus delicti* of the crime of rape was established.

The appellant contends the state failed to properly allege and establish the venue for the rape and murder. The appellant presents the same arguments here that were advanced and rejected in the recent cases of *State v. Bell,* 224 Kan. 105, 577 P.2d 1186 (1978) and *State v. Duvaul,* 223 Kan. 718, 576 P.2d 653 (1978). Venue for the murder and rape was proper in either Sedgwick or Sumner county.

Finally, the appellant argues the trial court erred in refusing to instruct the jury on the possible lesser included offense of simple kidnapping. He claims that bodily harm must be committed in the same county in which the abduction took place in order to be convicted of aggravated kidnapping. Neither Kansas statute (K.S.A. 21-3421) nor case law makes such a requirement. In *State v. Com,* 223 Kan. 583, 575 P.2d 1308 (1978) our court held:

"The trial court has an affirmative duty to instruct on lesser included offenses whether or not requested to do so by the accused, but the duty arises only where there is at least some evidence on which the jury might convict of the lesser offense. Failure to instruct on some lesser degree of a crime is not grounds for reversal if the evidence at trial excludes a theory of guilt on the lesser offense. (*State v. Wright,* 221 Kan. 132, 557 P.2d 1267.) Bodily harm to the victim is the additional element elevating kidnapping to aggravated kidnapping." (p. 591.)

Here the appellant admitted both the rape and murder of Tammy Kershner. There was no need to instruct on simple kidnapping, and the appellant's argument must fail.

The judgment of the lower court is affirmed.