(607 P.2d 93)
No. 51,117

STATE OF KANSAS, *Appellee,* v. SHELLY R. MCCONICO, *Appellant.*

Opinion filed February 29, 1980.

*N. Trip Shawver,* of Wichita, for appellant.

*Neal Brady,* assistant district attorney, *Vern Miller,* district attorney, and *Robert T. Stephan,* attorney general, for appellee.

Before REES, P.J., SPENCER and MEYER, JJ.

REES, J.: Defendant Shelly R. McConico appeals her conviction of felony theft (K.S.A. 1979 Supp. 21-3701[a]). Prior to trial, defendant unsuccessfully sought suppression of an inculpatory statement. The sole question on appeal is whether suppression was erroneously denied.

On December 7, 1978, defendant was arrested and taken into custody upon an unrelated charge referred to in the record as "petty larceny." Her problems seem to have almost immediately mushroomed to include another unrelated charge of parole violation. From the day after her arrest until her first appearance (see K.S.A. 22-2901) in the present proceeding on December 14, defendant remained in the Sedgwick County jail and had no contact with or advice of counsel. At no time during this period was she taken before a judge.

It is uncontroverted that defendant had no retained counsel, at all material times was indigent, and that on December 9 she made a written request to jail personnel "for a lawyer" to obtain legal advice. Her request went unheeded. No attorney was provided for defendant until appointment of her present counsel on December 15, the day after her first appearance.

At approximately 10:00 a.m. on the morning of December 13, Wichita Police Detective Burnett met with defendant at the jail to question her concerning a December 7 theft of $150 cash from a Wichita filling station, the crime of which she now stands convicted. This was the first questioning of defendant concerning this theft. Burnett completed a personal history questionnaire from information provided by defendant in response to his in-

quiries. He then orally gave her the *Miranda* warning, advising her of her rights by reading from a printed form. Defendant initialed and signed the form acknowledging she understood her rights and was willing to be questioned. When Burnett began his interrogation, defendant said she would like to first consult a lawyer. Burnett immediately terminated the interview, cut off the questioning.

On the afternoon of December 13, some three and one-half hours after his previous session with defendant, Burnett received word from jail personnel that defendant wished to speak with him. At about 2:00 p.m. Burnett met with her. He gave defendant a fresh *Miranda* warning by orally reading to her the printed form language. Defendant initialed and signed this second form acknowledging she understood her rights and was willing to be questioned. The record does not reflect she stated she did not want a lawyer. Defendant told Burnett the reason she wanted to talk was so she could get out on bond and see her children. Defendant was questioned and made an oral confession of the filling station theft. Based on her statement, on December 14 a combined complaint and information was filed and defendant was taken before an associate district judge, acting as a magistrate, for her first appearance (see *State v. Taylor*, 3 Kan. App. 2d 316, 318, 594 P.2d 262 [1979]).

From his interrogation, Burnett learned defendant had committed the theft to obtain money for drugs. There is no evidence indicating the frequency or nature of defendant's drug use. Neither is there evidence defendant's appearance, conduct or speech disclosed drug use or withdrawal signs at any time now pertinent. Burnett testified there were no threats, coercion, or physical force; defendant appeared to understand the questions asked and responded with logical answers. There is no contention defendant is mentally incompetent or did not understand her rights, or that apart from the issue she now raises, her answers to Detective Burnett's interrogation did not constitute a voluntary statement.

On appeal, defendant claims she was deprived of her Fifth Amendment right against self-incrimination and her Sixth Amendment right to counsel. She urges us to adopt the rule that once a person has requested an attorney, under no circumstances may that person be subjected to custodial interrogation without an attorney present or prior consultation with an attorney.

In support of her contention, defendant cites *People v. Arthur,* 22 N.Y.2d 325, 329, 292 N.Y.S.2d 663, 239 N.E.2d 537 (1968), for the following rule:

"Once an attorney enters the proceeding, the police may not question the defendant in the absence of counsel unless there is an affirmative waiver, in the presence of the attorney, of the defendant's right to counsel . . . ."

Defendant also refers to the following language of *Miranda v. Arizona,* 384 U.S. 436, 444-445, 16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974 (1966), as supportive of her position:

"Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. *If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking. there can be no questioning.* Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him." (Emphasis added.)

We find defendant's argument not persuasive.

The New York *Arthur* rule, 22 N.Y.2d 325, has been followed by a few courts but rejected by others. *State v. Smith,* 294 N.C. 365, 375, 241 S.E.2d 674 (1978). Even if it might be said our Supreme Court has not already done so, we need not now decide which we should do.

The *Arthur* language relied upon by defendant is lifted out of context. Further, even if we were to follow the *Arthur* rule, facts necessary to trigger the invocation of the rule do not exist in this case.

The penultimate statement preceding the cited language of *Arthur* is:

"Thus, the principle which may be derived from these pre-*Miranda* (*Miranda v. Arizona,* 384 U.S. 436) cases is that, once the police know or have been apprised of the fact that the defendant *is represented by counsel or that an attorney has communicated with the police for the purpose of representing the defendant,* the accused's right to counsel attaches; and this right is not dependent upon the existence of a formal retainer." (Emphasis added.) 22 N.Y.2d at 329.

In *State v. Smith,* 294 N.C. at 374-375, the North Carolina Supreme Court has aptly observed:

"[The *Arthur*] rule was succinctly stated in *People v. Hobson,* 39 N.Y.2d 479, 481, 384 N.Y.2d 419, 420, 348 N.E.2d 894, 896 (1976), as follows: 'Once a lawyer has entered a criminal proceeding representing a defendant in connection with

criminal charges under investigation, the defendant in custody may not waive his right to counsel in the absence of the lawyer  . . . .  Any statements elicited by an agent of the State, however subtly, after a purported "waiver" obtained without the presence or assistance of counsel, are inadmissible.'

"We also note that in *Hobson* the court was careful to point out that 'the rule of the *Arthur* case is not an absolute. Thus, the fact that a defendant is represented by counsel in a proceeding unrelated to the charges under investigation is not sufficient to invoke the rule.' 39 N.Y.2d at 483, 384 N.Y.S.2d at 422, 348 N.E.2d at 897.

"The *Arthur* rule, that a defendant in custody who is represented by counsel may not waive his constitutional rights in counsel's absence, is not the law in this State. [Citations omitted.] Further, as the New York Court of Appeals freely conceded in *Hobson,* 39 N.Y.2d at 483-84, 384 N.Y.S.2d at 422, 348 N.E.2d at 897-98, the rule of *Arthur* extended a defendant protection under the State constitution beyond that afforded by the Federal Constitution as interpreted in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)."

At the time of defendant's interrogation on the afternoon of December 13, she had no retained counsel nor had there been volunteered or appointed appearance of an attorney in regard to the investigation of the December 7 filling station theft. There had been no "entry of an attorney into the proceeding."

Defendant's proposed application of *Miranda* is too broad. In *Michigan v. Mosley,* 423 U.S. 96, 46 L.Ed.2d 313, 96 S.Ct. 321 (1975), it was held a statement disclosing participation in a homicide obtained as the product of custodial interrogation was admissible where at an earlier interrogation concerning two robberies, crimes different in nature and in time and place of occurrence from the homicide, defendant's invocation of his right to silence, to cut off questioning, was scrupulously honored. The incriminating statement was the result of a later police initiated interrogation focused on the homicide, conducted more than two hours after the earlier interrogation, and following a fresh *Miranda* warning at the outset. The opinion expressly observes:

"This is not a case, therefore, where the police failed to honor a decision of a person in custody to cut off questioning, either by refusing to discontinue the interrogation upon request or by persisting in repeated efforts to wear down his resistance and make him change his mind. In contrast to such practices, the police here immediately ceased the interrogation, resumed questioning only after the passage of a significant period of time and the provision of a fresh set of warnings, and restricted the second interrogation to a crime that had not been a subject of the earlier interrogation." 423 U.S. at 105-106.

The issue in *Mosley* was whether the conduct of the police that led to Mosley's incriminating statement violated the *Miranda*

"guidelines," *established to protect a person's constitutional privilege against compulsory self-incrimination,* so as to render the statement inadmissible in evidence against Mosley at his trial. 423 U.S. at 100. It was held Mosley's incriminating statement did not violate *Miranda* principles. 423 U.S. at 107.

The *Mosley* opinion points out the *Miranda* passage there at issue "states that 'the interrogation must cease' when the person in custody indicates that 'he wishes to remain silent.' *It does not state under what circumstances, if any, a resumption of questioning is permissible."* (Emphasis added.) 423 U.S. at 101. The teaching of *Mosley* is perhaps best found in the following language of the opinion:

"To permit the continuation of custodial interrogation after a momentary cessation would clearly frustrate the purposes of *Miranda* by allowing repeated rounds of questioning to undermine the will of the person being questioned. At the other extreme, a blanket prohibition against the taking of voluntary statements or a permanent immunity from further interrogation, regardless of the circumstances, would transform the *Miranda* safeguards into wholly irrational obstacles to legitimate police investigative activity, and deprive suspects of an opportunity to make informed and intelligent assessments of their interests. Clearly, therefore, *neither this passage nor any other passage in the Miranda opinion can sensibly be read to create a per se proscription of indefinite duration upon any further questioning* by any police officer on any subject, once the person in custody has indicated a desire to remain silent.

"A reasonable and faithful interpretation of the *Miranda* opinion must rest on the *intention of the Court in that case to adopt 'fully effective means . . . to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored . . . .'* 384 U.S. at 479. The critical safeguard identified in the passage at issue is a person's 'right to cut off questioning.' Id., at 474. Through the exercise of his option to terminate questioning he can control the time at which questioning occurs, the subjects discussed, and the duration of the interrogation. The requirement that law enforcement authorities must respect a person's exercise of that option counteracts the coercive pressures of the custodial setting. We therefore conclude that the admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his 'right to cut off questioning' was 'scrupulously honored.' " (Emphasis added.) 423 U.S. at 102-104.

Although defendant's placement of her initials and signature upon the fateful second printed rights form closely followed by responses to Burnett's questions is strong evidence of waiver that afternoon of her *Miranda* rights, defendant directs our attention to two assertedly countervailing facts. On December 9, she had asked for a lawyer. After similarly signing a like form at her first session with Burnett she had immediately exercised her right to

remain silent, cut off questioning, by stating she wanted to consult a lawyer.

In regard to a waiver, it is said in *United States v. Hilliker,* 436 F.2d 101, 102 (9th Cir. 1970), *cert. denied* 401 U.S. 958 (1971):

"Even though the Supreme Court stated that '[a]n express statement that the individual is willing to make a statement and does not want an attorney followed closely by a statement could constitute a waiver[,]' *Miranda,* 384 U.S. at 475, 86 S.Ct. at 1628, it did not say that these are the only circumstances under which a valid waiver may be found. While the Court in *Miranda* emphasized that a valid waiver will not be 'presumed' simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained, we think a waiver may be implied where warranted under the facts of a particular case."

We and our Supreme Court have held that there need not be an express waiver of *Miranda* rights; waiver may be inferred from the circumstances of the individual case. The inference is particularly valid when a defendant who has been advised of his *Miranda* rights and has acknowledged his understanding of them, freely answers questions put to him. *State v. Wilson,* 215 Kan. 28, 30-31, 523 P.2d 337 (1974); *State v. Baker,* 2 Kan. App. 2d 395, 580 P.2d 90 (1978). This principle has since been announced by the United States Supreme Court in *North Carolina v. Butler,* 441 U.S. 369, 60 L.Ed.2d 286, 99 S.Ct. 1755 (1979), where it is said with regard to the contention that waiver of the *Miranda* "right to counsel" requires an express waiver:

"There is no doubt that this respondent was adequately and effectively apprised of his [*Miranda*] rights. The only question is whether he waived the exercise of one of those rights, the right to the presence of a lawyer. Neither the state court nor the respondent has offered any reason why there must be a negative answer to that question in the absence of an *express* waiver. This is not the first criminal case to question whether a defendant waived his constitutional rights. It is an issue with which courts must repeatedly deal. Even when the right so fundamental as that to counsel at trial is involved, the question of waiver must be determined on 'the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'" 441 U.S. at 374-375.

Further, our Supreme Court has stated its recognition of *Butler* and adhered to the rule of implied waiver of the *Miranda* right to counsel in the recent case of *State v. Jackson,* 226 Kan. 302, 305, 597 P.2d 255 (1979).

Does defendant's December 9 request for a lawyer subvert the admissibility of defendant's confession? We believe not. The absence of any showing that as of that date law enforcement

officials had focused attention on defendant in their investigation of the December 7 theft dispels argument that defendant then was asserting her *Miranda* right to the advice or presence of counsel in regard to or at a custodial interrogation concerning that theft.

Defendant's assertion of her *Miranda* right to counsel at her first session with Detective Burnett, which concerned the December 7 theft, presents us with the question of whether that single act rendered constitutionally impermissible the taking of her statement prior to the appointment of counsel and her consultation with him. We believe not.

Our Supreme Court has stated:

"[T]hat failure to have counsel present does not 'ipso facto' make a defendant's statement involuntary. *State v. Creekmore,* 208 Kan. 933, 934, 495 P.2d 96 (1972). See also *State v. Melton,* 207 Kan. 700, 486 P.2d 1361 (1971).

" 'An accused may effectively waive the right to have counsel present during any police interrogation. The fact that he has previously retained counsel does not necessarily make inadmissible a voluntary statement made by the defendant in his counsel's absence.' *State v. Taylor,* 217 Kan. 706, Syl. 5, 538 P.2d 1375." *State v. Johnson,* 223 Kan. 237, 243, 573 P.2d 994 (1977).

See also *Michigan v. Mosley,* 423 U.S. at 102-104.

In our view, the *Miranda* right to counsel is not the Sixth Amendment right to counsel. The *Miranda* right to counsel is a prophylactic to assure voluntariness of custodial interrogation product. *Miranda* was a Fifth Amendment right against self-incrimination case. This is gleaned from a reading of the entirety of the majority opinion wherein there is repeated reference to this, the separate opinions of Justices Clark, Harlan and White, as well as subsequent opinions of other courts, *e.g., Carvey v. LeFevre,* 611 F.2d 19 (2d Cir. 1979). Accordingly, we believe that Kansas opinions have in some instances mistakenly referred to the *Miranda* right to counsel as the Sixth Amendment right to counsel. *E.g., State v. Wilson,* 215 Kan. at 31; *State v. Melton,* 207 Kan. 700, 709-711, 486 P.2d 1361 (1971); *State v. Holt,* 2 Kan. App. 2d 1, 3, 5, 573 P.2d 1117 (1978).

It has been said by the United States Supreme Court that the Sixth Amendment right to counsel does not attach until "the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information or arraignment." *Kirby v. Illinois,* 406 U.S. 682, 689, 32 L.Ed.2d 411, 92 S.Ct. 1877 (1972). See also *Moore v. Illinois,* 434 U.S. 220, 228-229, 54 L.Ed.2d 424, 98 S.Ct. 458 (1977); *Brewer v.*

*Williams,* 430 U.S. 387, 398, 51 L.Ed.2d 424, 97 S.Ct. 1232 (1977); *United States v. Ash,* 413 U.S. 300, 303, n. 3, 37 L.Ed.2d 619, 93 S.Ct. 2568 (1973). It is our conclusion that defendant's Sixth Amendment right to counsel had not attached at the time she gave her statement on the afternoon of December 13. See *Eben v. State,* 599 P.2d 700, 705-707 (Alaska 1979).

Whether we are here faced with reliance upon the true Sixth Amendment right to counsel or the *Miranda* right to counsel, precedent requires the conclusion that defendant's argument cannot stand. *Brewer v. Williams,* 430 U.S. at 404, 405-406 (majority opinion), 413 (Powell, J. concurring opinion); *State v. Jackson,* 226 Kan. at 305; *State v. Taylor,* 217 Kan. 706, 711, 538 P.2d 1375 (1975); *State v. Wilson,* 215 Kan. at 31; *State v. Melton,* 207 Kan. at 709-711; *North Carolina v. Butler,* 441 U.S. at 374-375; *cf. People v. Cunningham,* 48 U.S.L.W. 2537 (N.Y. 1980) (state constitutional and statutory guarantees and state case law).

Affirmed.