CITY OF DAYTON *v.* NUGENT, JR.

[Cite as Dayton v. Nugent (1970), 25 Ohio Misc. 31.]

(No. B 740393—Decided September 4, 1970.)

Dayton Municipal Court, Traffic Division.

*Mr. Dick Hammond,* prosecuting attorney, for plaintiff.
*Mr. Keith Saeks,* for defendant.

RICE, J. The defendant is charged by affidavit with driving while under the influence of alcohol (DWI) in violation of Section 308 of the ordinances of the city of Dayton, Ohio.

The defendant, through his attorney, has filed a multi-branched motion, asking the court to:

1. Dismiss the affidavit against him for the reason that the arresting officer or officers did not have probable cause to believe that the defendant was under the influence of alcohol at the time of his arrest.

2. Suppress the results of any physical tests administered to the defendant by the arresting officer at the scene of the arrest ("walk the line," "finger to nose" test and the "pick up coins" test), for the reason that the arrest, based upon evidence insufficient to amount to probable cause, was unlawful.

3. Suppress any statements, oral or written, taken from the defendant by the arresting officer, for the reason that said defendant was not advised of his constitutional rights against self-incrimination, and

4. Suppress, as evidence, the fact of the defendant's failure to submit to a test or tests designed to determine the alcoholic content of his blood and to enjoin the Dayton Municipal Court from notifying the Registrar of Motor Vehicles of the defendant's failure or refusal to submit to such a test, which said notification would result, under the law, in the defendant's driver's license being suspended for a period of six months, regardless of the disposition of the pending DWI case.

I. *The Facts*

The facts, as presented at the hearing on the above motion, are not in dispute and may be simply stated as follows:

On Friday, October 10, 1969, at approximately 2:30 a. m., Dayton police officers Ross and Leen observed the defendant driving southbound on Keowee Street in Dayton, in an erratic fashion. During the period of time between

the officers' first observing the defendant and their pulling him over to check his license and to ascertain the reasons for this erratic driving, they observed him go left of center on at least three occasions and to change lanes repeatedly, weaving back and forth across the road. On at least one occasion, the officers were able to observe the defendant narrowly avoid a collision with another vehicle. Once the defendant's car was stopped, the defendant was observed to get out of his car very slowly and walk to the rear in a staggering and stumbling fashion. Upon observing the defendant, Officer Ross noted his messed and disheveled appearance. His oral responses were slow and his breath contained the odor of alcohol. The defendant stated that ''he had been to a bar on Dixie and had had five or six high balls.'' The defendant was then given certain physical tests on the scene, designed to test sobriety, to wit: the ''walk the line'' test, the ''finger to nose'' test, and the ''picking up coins'' test. He failed to complete any of the three successfully. He was then arrested, advised of his constitutional rights under the *Miranda* rule, and ''helped and aided'' into the police cruiser.

After he was booked into the county jail, the defendant asked to be allowed to call his attorney. He was told by a member of the Dayton Police Department that he would have to wait for four hours before he would be allowed to make such a call. Shortly afterwards, he was asked by the breathalizer operator to take the test to determine the alcoholic content of his blood. He was advised, by said operator, of all of the warnings and rights required under R. C. 4511.-19 and 4511.191, to wit: that he had the right to have a physician of his choice administer an independent test and that the consequences of his failure to take the examination would be that his driving privileges would be suspended for a period of six months.

The defendant refused to submit to any test without first talking to his attorney. Once again, the defendant was advised that he would not be permitted to call his attorney until after the expiration of a four-hour period from the time he was first booked into the jail. The defendant then refused to submit to the test.

Under R. C. 4511.19, such a test must be administered within two hours after the time of the alleged violation.

The police department has a policy (the reasons for which were unexplained) that no prisoner charged or under investigation for DWI shall be permitted to place a call, to an attorney or other person, until after the expiration of a four-hour period from the time he was first booked. In addition, the department has a policy that one arrested for DWI, regardless of whether he possesses sufficient monetary means to make bail, cannot be released on bond until at least four (4) hours after arrest. The defendant had sufficient money to post bond at the time of his arrest had he been allowed to do so.

II. *Decision*

A. *Branches one, two, and three*

The first three branches of the defendant's four branched motion can be dealt with in short order. The court finds that same are not well taken and does, therefore, overrule them in their entirety.

A brief review of the facts, all of which are undisputed, will indicate that probable cause existed to stop the defendant's car and to place him under arrest. One need only recall the testimony concerning the defendant's erratic driving (weaving in and out of lanes of traffic, driving left of center, etc.), to agree that probable cause to stop the defendant's automobile was present. These factors, coupled with his staggering gait, his slow oral responses, his disheveled appearance, the odor of alcohol about his person, and his statement that he had had five or six high balls, all go toward leading a reasonably prudent person to believe he was observing or had observed the offense of DWI taking place in his presence. Since probable cause to stop and arrest existed, branch number one of the defendant's motion, asking the court to dismiss the affidavit, is overruled.

Branch number two, asking the court to suppress the results of any "on the scene" tests for sobriety given the defendant by the arresting officer is overruled. These tests were not given until after the arrest. The court, having

already held the arrest to be lawful, holds that these tests, following a lawful arrest, were properly administered. In answer to the defendant's claim that requiring the defendant to submit to these tests violates his Fifth Amendment rights against self-incrimination, the court would only remind counsel that although *Miranda* warnings need not be given in a misdemeanor case (See *State* v. *Pye*, 249 N. E. 2d 826), the defendant was given his full *Miranda* warnings prior to being asked to take these tests.

Branch number three, asking the court to suppress any oral or written statements, taken from the defendant by the arresting officer is overruled. It is unclear whether the defendant's incriminating remarks (as to having had five or six high balls) were voluntarily made or given in response to a question asked by the officer. Regardless, they cannot be suppressed. In Ohio, pursuant to *State* v. *Pyle, supra,* the failure to advise one of his *"Miranda* rights'' against self incrimination has no exclusionary effect with regard to a misdemeanor.

B. *Branch Four*

Branch four of the defendant's motion bears detailed discussion for the reason that at least one of the points raised, while never having been directly raised and decided in Ohio, has direct bearing on the right of an individual, requesting an attorney, to consult with that attorney prior to making a decision as to whether to submit to an "alcoholic content'' or breathalizer test, under R. C. 4511.19 and 4511.191.

The defendant has raised certain constitutional objections to R. C. 4511.191, but the constitutionality of that section is no longer in doubt. *City of Westerville* v. *Cunningham,* 15 Ohio St. 2d 121. This contention is thus without merit.

The defendant has also raised objections on the ground that the officer never advised the defendant of his rights to have an independent test to determine the concentration of alcohol in his blood made by a physician or technician of his own choosing. Yet, the only available evidence, uncontroverted in any particular, indicates that the officer

in charge of the breathalizer, did, in fact, advise the defendant of this right and also, as is required under R. C. 4511.191, so advise him as to the consequences of his failure to take the test.

The crucial issue at bar is whether the police department's refusal, as a matter of policy, to allow a defendant charged with DWI, required under R. C. 4511.19 to be offered an alcoholic content test within two hours from the alleged violation, to contact an attorney until four hours after he was booked, is violative of R. C. 2935.14 and 2935.20 and deprives the defendant of both his statutory and constitutional rights to counsel.

This issue achieves paramount importance in this case for the reason that: (1) the defendant *asked for* the opportunity to call and consult his attorney on at least two occasions, once immediately after he was booked, and the second occasion after he was offered the breathalizer test and advised as to the consequences of his refusal to take said test. In fact, the defendant refused to submit to the test without first speaking to his attorney. Since he wasn't even given the opportunity to contact his attorney, he never took the test; (2) the alcoholic content test, must, under the terms of R. C. 4511.19 be administered within two hours after the alleged violation. Therefore, as a practical matter, because of the departmental policy, an individual charged with DWI is effectively denied the right to counsel with an attorney on the important question of whether or not he should submit to the test. Since he cannot speak to an attorney before the expiration of the two-hour period, he must decide on his own whether to take the test and run the risk of convicting himself of DWI or refusing and losing his license for a six-month period, regardless of the eventual disposition of the DWI charge.

It appears to the court that applicable statutes and case law, as well as traditional concepts of justice and the constitutional right to counsel under the Sixth Amendment *must* apply here and leave the court with no choice other than to sustain branch four of the defendant's motion in its entirety.

Both counsel have gone to great efforts to examine the provisions of R. C. 2935.14 in an attempt to determine whether or not that section applies to the instant case. R. C. 2935.14 *is* applicable to the facts of the case at Bar in that it provides, in effect, that an accused must be speedily furnished facilities to communicate with an attorney, or other person for the purpose of obtaining an attorney. The prosecution's heroic attempt to restrict this requirement to felonies by stating that the gist of this section, with regard to misdemeanor violations, is to assure that the arrested subject will be provided the opportunity to make bail, as opposed to consulting an attorney, is violative of established case law, constitutional principles and common sense. The court feels that the felony-misdemeanor distinction is not applicable here and that R. C. 2935.14 is applicable to misdemeanors as well as to felonies, and those charged with misdemeanors have as much right to be furnished facilities to communicate with an attorney as any accused felon.

As further indication that R. C. 2935.14 applies to misdemeanors, such as the case at Bar, the court notes that said section orders that a defendant or one in custody be speedily permitted facilities to communicate with an attorney ... *if the person arrested is unable to offer sufficient bail.* (Emphasis added.)

In the case at Bar, notwithstanding the fact that the defendant could have offered sufficient bail in monetary terms, he could not be released, since the offense with which he was charged was not bailable for a four-hour period after arrest. In this sense, he was unable to offer "sufficient bail" within the meaning of the statute and was, thus, pursuant to said statute, entitled to consult with his attorney. *Toledo* v. *Dietz,* 3 Ohio St. 2d 30.

In the case of *Toledo* v. *Dietz, supra,* the court held in essence, that R. C. 2935.14 *did* apply to one charged with DWI. In that case a majority, while holding that the section did apply to DWI cases, nevertheless affirmed the conviction on the grounds that although the defendant was not permitted to confer with an attorney, the action of a

law enforcement officer in communicating with the defendant's brother was sufficient compliance with R. C. 2935.14.

In the case at Bar, no communication was made *to anyone* on the outside *by anyone* even though the defendant, on at least two occasions, asked for and was denied permission to call an attorney.

In addition, the provisions of R. C. 2935.20 captioned *"Right to Counsel"* apply, with full force and effect, to the facts at Bar. The mandatory requirements of this section have been violated by the departmental policy in question and such violation of the defendant's right to counsel, guaranteed by statute, makes it imperative that the court sustain branch four of the defendant's motion.

R. C. 2935.20, which is analogous to and therefore must be read together with R. C. 2935.14 reads, in pertinent part, as follows:

"After the arrest, detention, or any other taking into custody of a person, with or without a warrant, such person shall be permitted *forthwith* facilities to communicate with an attorney at law of his choice . . . or to communicate with any other person of his choice for the purpose of obtaining counsel. Such communication may be made by a resonable amount of telephone calls or in any other reasonable manner. Such person shall have a right to be visited immediately by any attorney at law so obtained . . . and to consult with him privately. No officer . . . shall prevent, attempt to prevent or advise such person against the communication, visit or consultation provided for by this section." (Emphasis added.)

The foregoing section, which imposes criminal sanctions for its violation, is clear and unequivocal both in its meaning and in its application to the facts of the case at Bar. An arrested individual must be *forthwith* granted facilities to communicate with an attorney. Forthwith means, by definition, immediately. No distinction is made in R. C. 2935.20 either between felonies and misdemeanors or between different types of crimes within each classification. The section contains no exception for certain crimes such as DWI.

It is thus clear that a police department must afford an arrested subject, arrested for any type or classification of crime, the *immediate* use of facilities with which to communicate with an attorney. It is equally clear that the police department's imposition of the "four hour rule," as regards communication with an attorney, violates this statute. Every prisoner, regardless of the reason for his arrest or the crime for which he is being held must—*immediately*—be given the opportunity to contact an attorney.

Since R. C. 2935.20 is analogous with R. C. 2935.14 in that both sections deal with, to some degree, the prisoner's right to be given facilities with which to communicate with an attorney, each section must be read in the light of the other in order to define any terms used in the body of those statutes (*in pari materia*). The phraseology in R. C. 2935.14, analogous to ".20's" "forthwith" is "speedily permitted." It is clear that the requirement of ".14" that an arrested subject be "speedily permitted facilities to communicate, etc." must be interpreted, in light of ".20," as meaning immediately. The court thus holds that under R. C. 2935.14 and 2935.20, an arrested subject, regardless of the nature of the crime or offense for which he is being held, must be *immediately* afforded the opportunity to communicate with an attorney or other person for the purposes of contacting an attorney, and such arrested subject shall have the right to be immediately visited by said attorney of his choice.

The prosecutor attempts to avoid the consequences of the police department's denying the defendant the right to counsel by arguing that, under the terms of R. C. 4511.-191, the defendant has impliedly given his consent to such a test and the Legislature has made his choice for him. In other words, the prosecutor argues that the defendant had no real decision to make as he had no real right under the U. S. or Ohio Constitutions to refuse to submit to the test. The court disagrees, in toto, with this rationale. The question of whether or not to take the test may, depending upon the facts and circumstances of each case, have very real bearing upon whether a person is or is not convicted

of DWI, does or does not lose his license and suffers the penalty of a heavy fine or jail sentence. Only an attorney, with the full knowledge of the facts gained from his client, can weigh the factors of each case and make a proper decision.

Even assuming the prosecutor's rationale to be a correct one, surely no one would argue that the constitutional right to counsel must be conditioned upon or limited by the question of whether, in a given case or class of cases, the consulting of an attorney would be of any real practical or legal value to the defendant. The right to counsel is an absolute one, not conditioned by whether or not, in a given case, such a right would prove to be of any value to a defendant or one held in custody. Certainly, the Ohio Legislature in passing "the implied consent law" did not mean to do away with the constitutional right to counsel.

The reasons for the present departmental policy are not important; only the impact of this policy on this case and this class of cases warrants scrutiny today. During this two-hour period, within which departmental policy refuses to allow a man, despite his requests, to consult an attorney, a defendant, without the aid of counsel, unable to make bail, often in an intoxicated or dazed state, must make a decision as to whether or not to take a breathalizer test; a decision upon which might well rest his freedom, his right to drive and the question of whether or not he must bear the extraordinarily high cost of financial responsibility insurance. Such a policy has the effect, both as a practical and as a legal matter, of depriving a defendant of his right to counsel guaranteed by R. C. 2935.14 and 2935.20, and the Sixth Amendment as made obligatory upon the states through the Fourteenth Amendment.

In the case at Bar, the defendant did not take the test. Such a refusal is a fact admissible in a trial on a charge of DWI. Should the defendant plead "not guilty" to the charge, whether he be later convicted or acquitted, no successful challenge to the six-month suspension could be mounted. In other words, once the test is refused, if the defendant stands on his plea of "not guilty," regardless of the eventual verdict in the DWI case, his license must be

suspended under R. C. 4511.191. *In re Williamson*, 18 Ohio Misc. 67. Should, however, the defendant plead guilty to the charge, the Ohio courts hold that the Bureau of Motor Vehicles cannot suspend the driver's license for the defendant's failure to submit to an alcoholic content test. *In re Williamson, supra*; *In re Dudley*, 19 Ohio Misc. 165; and *Groff* v. *Rice*, 20 Ohio App. 2d 309, a case decided by our own Second District Court of Appeals (however, see also *Hoban* v. *Rice*, 22 Ohio App. 2d 130, holding to the contrary), thus, the defendant, has, by virtue of being denied counsel, been put into the position that, whether guilty or not, he may have to weigh the consequences of acquittal or conviction at trial with a consequent loss of driving privileges for six months, against the very real practical advantage (as far as his driving license is concerned) of his entering a plea of guilty. It may be argued that had the defendant submitted to the test, the results might have been sufficiently high in alcoholic content that he would have convicted himself. It may be argued with equal force that the results might have showed his alcoholic content to be below that figure which would warrant a charge or conviction of DWI. Regardless of what the test results *might* have shown, the defendant would not now be in the position, regardless of his guilt or innocence of the charge of DWI, of having to weigh the advantages of a plea of guilty so that he might not lose his driving rights for failure to have submitted to the test. In other words, had the defendant spoken to his attorney, an entirely different set of options might now be presented to the defendant, upon which options he could make a more intelligent choice. He would not be in his present "damned if he does, damned if he does not" situation.

It is the express purpose and intent of this decision to declare unlawful the police department's present policy of not permitting a person charged with DWI to contact an attorney for a period of four hours after he is booked. Such a rule is illegal in that it violates the express provisions of R. C. 2935.14 and 2935.20 and effectively denies an individual of his constitutional rights to counsel under the Sixth Amendment.

It is to be emphasized that the opportunity or the facilities to communicate with an attorney must be offered to the subject in custody. The police department need not insure that a defendant actually contacts or consults with counsel. Like all other constitutional rights, this right can be *intelligently* waived by a defendant, providing the defendant is offered the required facility and made aware of the fact that he does possess the right to communicate with an attorney. Since one cannot waive a right, the existence of which he is unaware, the department is under a duty to not only advise a defendant of his right to contact an attorney, but also to advise the defendant that facilities are or will be made available for that purpose.

Evidence illegally obtained (in violation of a constitutional right) is inadmissible in a criminal trial, and the motion to suppress said evidence must therefore be granted. *Mapp* v. *Ohio*, 367 U. S. 643.

This decision in no way affects "the four hour rule" as it applies to the allowing of an individual jailed on a charge of DWI to post bond only after the expiration of a four-hour period from the time he is booked. This point was not raised in this motion and thus is not considered here, except as an added reason, since the offense of DWI is "nonbailable" for a four hour period, to apply the provisions of R. C. 2935.14 to the case at Bar.

The court thus holds that in a DWI case, such as the case at Bar, where a breathalizer test must be given within two hours of the alleged violation, pursuant to R. C. 4511.-19, if it is to be given at all, a subject in custody, booked for DWI, must be *immediately* given the opportunity to communicate with an attorney or other person for the purposes of obtaining counsel, REGARDLESS OF THE PRESENT DEPARTMENTAL POLICY TO THE CONTRARY.

WHEREFORE, the court overrules branches one, two and three of the defendant's motion and does sustain branch four of the defendant's motion in its entirety and does suppress, as evidence, the fact of the defendant's failure to submit to the "alcoholic content" test and does enjoin and prohibit any official of the Dayton Municipal Court from notifying the Registrar of Motor Vehicles of the defendant's failure to submit to such a test.