(682 P.2d 122)
No. 55,283

STATE OF KANSAS, *Appellant*, v. RANDY BRISTOR, *Appellee*.

Opinion filed May 3, 1984.

*Janet M. Velazquez*, assistant county attorney; *Daniel L. Love*, county attorney; and *Robert T. Stephan*, attorney general, for appellant.

*Glenn I. Kerbs*, of Patton & Kerbs, of Dodge City, for appellee.

Before REES, P.J., MEYER, J., and RICHARD W. WAHL, District Judge Assigned.

MEYER, J.: This is an appeal by the State from the trial court's order suppressing the results of a blood alcohol test (BAT) which was administered to defendant-appellee Randy Bristor shortly after his arrest for driving under the influence of alcohol.

At approximately 11:00 p.m. on the evening of July 30, 1982, defendant was driving in Dodge City, Kansas. He was observed by Trooper Jim Brooks of the Kansas Highway Patrol. Brooks stopped defendant in the parking lot of a local drinking establishment. Defendant was asked to exit his vehicle and to perform certain field sobriety tests.

Based on his observations of defendant, Brooks placed him under arrest for DUI, and informed him of his *Miranda* rights. Brooks then transported defendant to the Law Enforcement Center (LEC) in Dodge City.

At the LEC, defendant was placed in a squad room where he

was observed for approximately 20 minutes by Brooks and Officer Tom Bos of the Dodge City Police Department. During this period of observation, Brooks requested defendant's consent to the administration of a BAT, pursuant to K.S.A. 8-1001. Defendant requested to speak to a lawyer before expressing either consent or refusal. Brooks informed defendant that the decision was his and his alone, and that an attorney had nothing to do with it.

Defendant consented to the administration of a BAT. The test was administered by Officer Bos. Defendant was not allowed to contact an attorney prior to his eventual decision to consent to the BAT; he was, however, allowed to call an attorney immediately after the completion of the test.

Defendant filed a pretrial motion to suppress the results of the BAT. Hearings were had on this motion, and the court received testimony from defendant and Trooper Brooks. The District Court of Ford County, Kansas, filed a journal entry which ordered the results of defendant's BAT suppressed, on the ground that his consent to that test was obtained in violation of his constitutional right to counsel. The State has perfected this appeal from the trial court's order of suppression.

The single issue before this court is whether defendant was denied a constitutionally protected right to consult with an attorney prior to deciding whether to consent to the administration of a BAT.

The courts of many states have addressed the issue of whether a person accused of DUI has a right to consult with counsel prior to exercising or waiving his right to refuse the administration of a BAT. A number of them, including Arizona, Georgia, Kentucky, Oklahoma, Oregon, New Hampshire and Rhode Island, have concluded that no such right to counsel exists. Others, including Minnesota, Missouri, North Carolina, New York, Ohio and Washington, have upheld the right to counsel. While not all of the cases we have found are directly in point with the case at bar, we find all to be analogous and deem their reasoning persuasive. We shall return in the course of our discussion to examination of some of these out-of-state precedents; but first, we shall examine the issue in light of existing Kansas law.

In *State v. Irving*, 231 Kan. 258, 262, 644 P.2d 389 (1982), the court said:

"The rule is now well established that the right to counsel under the Sixth

Amendment does not attach prior to the initiation of adversary judicial proceedings against an accused. *Kirby v. Illinois,* 406 U.S. 682, 688, 32 L.Ed.2d 411, 92 S.Ct. 1877 (1972). Where a case is still in the investigative stage, or in the absence of a person being *charged, arrested,* or indicted, such adversary proceedings have not yet commenced, and thus no right to counsel has attached." (Emphasis added.)

In *State v. Estes,* 216 Kan. 382, 385-86, 532 P.2d 1283 (1975), the court said:

"A suspect in a criminal case has no right to have counsel at either a photographic or a physical lineup *conducted prior to the filing of formal criminal charges against him.* These are not to be considered critical stages of the proceeding which give rise to a right to counsel. (*State v. Anderson,* 211 Kan. 148, 505 P.2d 691; and *State v. McCollum,* 211 Kan. 631, 507 P.2d 196.) The Sixth Amendment guarantees attach only after the initiation of judicial criminal proceedings against an individual. (*Kirby v. Illinois,* 406 U.S. 682, 32 L.Ed.2d 411, 92 S.Ct. 1877.) At the time of the physical lineup the appellant by his own testimony admits he was *not under arrest* on charges upon which this appeal was taken." (Emphasis added.)

*Cf. State v. Zimmer,* 198 Kan. 479, 482, 426 P.2d 267, *cert. denied* 389 U.S. 933 (1967).

While not involving the BAT test, and thus not being specifically in point, we conclude that the requirement of a complaint and/or arrest requirement in each of the above cases makes them sufficient authority for us to affirm the trial court herein. It must be emphasized that in the instant case the defendant had been arrested, had been advised of his *Miranda* rights, and had been ticketed by the arresting officer. We conclude that it is very clear herein that the State had proceeded to the point where defendant was indeed entitled to consult with an attorney.

While, as we have said, we conclude the foregoing Kansas cases are sufficient authority for us to affirm the action of the trial court herein, we hereinafter set forth federal cases and those from states other than Kansas to show the reasoning adopted by those courts.

In the landmark case of *Powell v. Alabama,* 287 U.S. 45, 77 L.Ed. 158, 53 S.Ct. 55 (1932), the Supreme Court established the principle that the due process clause of the Fourteenth Amendment required that a person accused of crime be afforded "the guiding hand of counsel at every step in the proceedings against him." 287 U.S. at 69.

In succeeding cases, the court has made it clear that the right to counsel is not limited to the presence of counsel at trial.

"It is central to that principle that in addition to counsel's presence at trial, the accused is guaranteed that he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial. . . .

"In sum, the principle of *Powell v. Alabama* and succeeding cases requires that we scrutinize *any* pretrial confrontation of the accused to determine whether the presence of his counsel is necessary to preserve the defendant's basic right to a fair trial as affected by his right meaningfully to cross-examine the witnesses against him and to have effective assistance of counsel at the trial itself. It calls upon us to analyze whether potential substantial prejudice to defendant's rights inheres in the particular confrontation and the ability of counsel to help avoid that prejudice." *United States v. Wade,* 388 U.S. 218, 226-27, 18 L.Ed.2d 1149, 87 S.Ct. 1926 (1967).

It has come to be recognized that an accused is entitled to the presence of counsel at every "critical stage" of the prosecution. The Supreme Court presented a conceptual definition of what constitutes a "critical stage" in *Coleman v. Alabama,* 399 U.S. 1, 7, 26 L.Ed.2d 387, 90 S.Ct. 1999 (1970). See also *United States v. Ash,* 413 U.S. 300, 37 L.Ed.2d 619, 93 S.Ct. 2568 (1973); and *Argersinger v. Hamlin,* 407 U.S. 25, 32 L.Ed.2d 530, 92 S.Ct. 2006 (1972).

Finally, the opinion in *Kirby v. Illinois,* 406 U.S. 682, 32 L.Ed.2d 411, 92 S.Ct. 1877 (1972), provides us with the following concise, yet also comprehensive, summary of the scope and breadth of the constitutional right to counsel:

"In a line of constitutional cases in this Court stemming back to the Court's landmark opinion in *Powell v. Alabama,* 287 U.S. 45, it has been firmly established that a person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him. See *Powell v. Alabama, supra; Johnson v. Zerbst,* 304 U.S. 458; *Hamilton v. Alabama,* 368 U.S. 52; *Gideon v. Wainwright,* 372 U.S. 335; *White v. Maryland,* 373 U.S. 59; *Massiah v. United States,* 377 U.S. 201; *United States v. Wade,* 388 U.S. 218; *Gilbert v. California,* 388 U.S. 263; *Coleman v. Alabama,* 399 U.S. 1.

"[W]hile members of the Court have differed as to existence of the right to counsel in the contexts of some of the above cases, *all* of those cases have involved points of time at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.

. . . .

"The initiation of judicial criminal proceedings is far from a mere formalism. It is the starting point of our whole system of adversary criminal justice. For it is only then that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized

society, and immersed in the intricacies of substantive and procedural criminal law. It is this point, therefore, that marks the commencement of the 'criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable. See *Powell v. Alabama,* 287 U.S. at 66-71; *Massiah v. United States,* 377 U.S. 201; *Spano v. New York,* 360 U.S. 315, 324 (DOUGLAS, J., concurring)." 406 U.S. at 688-90.

Resolution of the issue in the case at bar turns on whether the point at which the accused is asked to consent to a BAT is a "critical stage" in the prosecution of a DUI case. We hold that such point in time is indeed a "critical stage," at which time the right to counsel attaches. Several conclusions lead us to this holding.

First, prior to being requested to consent to a BAT, defendant had been arrested by Trooper Brooks, who had prepared a complaint charging defendant with the specific crime of DUI (K.S.A. 8-1567). Thus, adversary judicial criminal proceedings had commenced against defendant. We would find it impossible to say that, at the time of the request, defendant was not "faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law." *Kirby v. Illinois,* 406 U.S. at 689. (As noted above, Kansas adopted the *Kirby* court theory in *State v. Irving,* 231 Kan. 258.)

Second, one who has been accused of DUI and asked to submit to a BAT is possessed of certain rights. All of these rights are not cumulative; however, the exercise of one of them may also operate as a relinquishment of some other. Thus, this point in time is a "critical stage" in the proceedings, because, if left unguided by counsel, the accused may irretrievably lose important rights. See *Hamilton v. Alabama,* 368 U.S. 52, 54, 7 L.Ed.2d 114, 82 S.Ct. 157 (1961). We shall elaborate on this point.

Kansas, like many other states, has enacted an "implied consent" statute. It states, in pertinent part:

"(a) Any person who operates a motor vehicle upon a public highway in this state shall be deemed to have given consent to submit to a chemical test of breath or blood, to determine the alcoholic content of the person's blood whenever the person is arrested or otherwise taken into custody for any offense involving operating a motor vehicle under the influence of alcohol in violation of a state statute or a city ordinance and the arresting officer has reasonable grounds to believe that prior to arrest the person was driving under the influence of alcohol. The test shall be administered at the direction of the arresting officer.

. . . . .

"(c) If the person so arrested refuses a request to submit to a test of breath or

blood, it shall not be given and the person's refusal to submit to the test shall be admissible in evidence against the person at any trial for driving under the influence of alcohol. The arresting officer shall make a report verified on oath to the division of vehicles of the refusal, stating that prior to the arrest the officer had reasonable grounds to believe that the person was driving under the influence of alcohol. Upon receipt of the report, the division immediately shall notify the person of the right to be heard on the issue of reasonableness of the failure to submit to the test . . . . If a hearing is not requested or if, after the hearing, the division finds that the refusal was not reasonable, and after due consideration of the record of motor vehicle offenses of the person, the division shall suspend the person's license or permit to drive or nonresident operating privilege for a period of not less than 120 days and not more than one year." K.S.A. 8-1001(*a*) and (*c*).

Another statute which has application to this case is K.S.A. 8-1004, which provides:

"Without limiting or affecting the provisions of K.S.A. 8-1001 to 8-1003, the person tested shall have a reasonable opportunity to have an additional chemical test by a physician of his or her own choosing. In case the officer refuses to permit such additional chemical test to be taken, then the original test shall not be competent in evidence."

Examining the two statutes above, it is apparent that they grant an accused certain rights. K.S.A. 8-1001(*c*) grants the inviolable right to refuse to submit to a BAT. The exercise of this right, however, carries with it two possible sanctions: one, the fact of refusal may be used as evidence against the accused on the DUI charge; and two, the fact of refusal will result in an administrative proceeding against the accused, which proceeding may result in a suspension of driving privileges. If the accused relinquishes his right to refuse, by consenting to a BAT, then K.S.A. 8-1004 operates and the accused has a right to a reasonable opportunity to obtain an independent and objective BAT. Also, K.S.A. 8-1002 gives the accused who submits a right to a copy of the results of the BAT requested by the police.

The Kansas appellate courts have consistently held that there is no duty upon the arresting officer to explain to the accused his rights under the foregoing statutes. In *Hazlett v. Motor Vehicle Department*, 195 Kan. 439, 442, 407 P.2d 551 (1965), it was held that the officer is not required to explain the consequences of refusal to the accused. The court in *City of Shawnee v. Gruss*, 2 Kan. App. 2d 131, 134, 576 P.2d 239, *rev. denied* 225 Kan. 843 (1978), held that the officer need not inform a consenting accused of his right to an independent BAT under K.S.A. 8-1004.

And in *State v. Mezins,* 4 Kan. App. 2d 292, 294, 605 P.2d 159, *rev. denied* 227 Kan. 928 (1980), it was held that there was no duty placed on the officer to inform the accused of his right, under K.S.A. 8-1001, to refuse to submit to a BAT.

The question obviously is how can an accused make an intelligent decision regarding submission to a BAT if he is ignorant of his various rights, and how can he in his ignorance protect those rights, if the officer is under no duty to enlighten him. The answer, clearly, is that only through the advice and counsel of an attorney can the accused be expected to make his decisions in an intelligent and knowledgeable manner. We find it particularly noteworthy that at least one court which refused to impose upon the officer a duty to inform the accused of his rights based its holding, at least in part, on the fact that the accused therein had been allowed to consult with counsel prior to submitting to a BAT. See *City of Shawnee v. Gruss,* 2 Kan. App. 2d at 134.

We would at this point reiterate the gist of the test from *United States v. Wade,* 388 U.S. at 227:

"whether potential substantial prejudice to defendant's rights inheres in the particular confrontation and the ability of counsel to help avoid that prejudice."

Applying that test to the case at bar, we would conclude that the point in time when an accused is requested to submit to a BAT is plainly a "critical stage" in the prosecution of a DUI charge. The decision which is made will be crucial to the future direction of the defense to the charge. It is at that point that rights may be gained or lost. Once lost, rights cannot be reclaimed or salvaged; and even those rights gained, such as the right to an independent BAT, can also be lost by the failure to timely assert them. Thus, if counsel is not available to the accused at that point, possible defenses may become irretrievable, even to the ablest of counsel, for no representation at trial, however stellar, could undo the harm done at that earlier point in time.

In *State v. Fitzsimmons,* 93 Wash. 2d 436, 610 P.2d 893, *vacated and remanded* 449 U.S. 977, *aff'd on remand* 94 Wash. 2d 858, 620 P.2d 999 (1980), the Supreme Court of Washington, faced with the issue before us today, reached a result the same as our own; some of that court's reasoning follows:

"The time immediately after arrest and charging for driving while under the influence, when the defendant is still in custody and must immediately make the decision whether to submit to the Breathalyzer, arrange for further testing and

observation of his mental state or forever lose any defense, is certainly such an event. Only by acknowledging the defendant's right of access to counsel can we insure he is meaningfully assisted in his defense." 93 Wash. at 445.

And see also *Prideaux v. State, Dept. of Public Safety,* 310 Minn. 405, 247 N.W.2d 385 (1976).

We subscribe to the reasoning of *Fitzsimmons* and *Prideaux.* We have examined a number of cases from states across our nation which have held contrary to our position herein. We have also examined *Fitzsimmons* and *Prideaux* and a host of other cases from states equally disparate. We recognize that these cases are not all identical to the one at bar. Some involved the right to counsel not in the arena of a court prosecution for DUI, but in license revocation proceedings before an administrative tribunal. Some of the cases rejected constitutional grounds for their holdings, relying instead on statutes or court rules. Despite these factual and legal differences, though, this line of cases champions a single unifying idea: that one accused of DUI has some right to consult with an attorney prior to deciding whether to submit to a BAT. Having compared the two opposing lines of cases mentioned above, we find the latter possesses the more compelling logic and expresses the fairer rule.

Before concluding, we shall address some of the arguments advanced on behalf of the State. One such argument is that the holding in *Schmerber v. California,* 384 U.S. 757, 16 L.Ed.2d 908, 86 S.Ct. 1826 (1966), is dispositive of the issue herein. The State's reliance on *Schmerber* is misplaced.

In *Schmerber,* the court ruled that a forcible extraction of blood from an unwilling accused for the purpose of a BAT was not a denial of due process; nor, it was held, was such a proceeding a violation of the rights of the accused under the Fourth, Fifth, or Sixth Amendments. *Schmerber* can, however, be distinguished on its facts from the case at bar. In Kansas, an accused has the absolute right to refuse to submit to a BAT; in *Schmerber,* the accused enjoyed no such privilege. The court in *Schmerber* grounded its denial of appellant's Sixth Amendment claim of a right to counsel on the fact that, because he could not legally refuse to take the test, advice of counsel to refuse was meaningless.

"Since petitioner was not entitled to assert the privilege, he has no greater right because counsel erroneously advised him that he could assert it. His claim is

strictly limited to the failure of the police to respect his wish, reinforced by counsel's advice, to be left inviolate. No issue of counsel's ability to assist petitioner in respect of any rights he did possess is presented. The limited claim thus made must be rejected." 384 U.S. at 766.

In contrast, when the accused may lawfully refuse to submit to a BAT, as he may in Kansas, the advice of counsel regarding the decision whether to submit can be highly meaningful. On this basis, *Schmerber* can be distinguished from and, thus, is not controlling in, the instant case. For a similar analysis of the *Schmerber* decision, see *People v. Sweeney*, 55 Misc. 2d 793, 795-96, 286 N.Y.S.2d 506 (1968).

The State also argues that since a BAT is a scientifically exact procedure, allowing little or no subjectivity, then there is no need for an attorney to be present at the taking of the test, because any variation from established procedures can be used to invalidate the test results when they are offered into evidence at trial. Thus, the argument proceeds, the absence of counsel at the administration of the BAT does not pose a serious threat of prejudice to the substantial rights of defendant herein. The State cites for support *United States v. Wade*, 388 U.S. 218, and *Gilbert v. California*, 388 U.S. 263, 18 L.Ed.2d 1178, 87 S.Ct. 1951 (1967).

No doubt the rule has long been that no constitutionally protected right of the accused is violated when he is required to present his physical person or his characteristics for examination, inspection or comparison. See *Holt v. United States*, 218 U.S. 245, 54 L.Ed. 1021, 31 S.Ct. 2 (1910); and *State v. Haze*, 218 Kan. 60, Syl. ¶ 1, 542 P.2d 720 (1975). The issue has been firmly and recently decided that neither the introduction of the results of a BAT, or the refusal to submit thereto, violates the Fifth Amendment prohibition against compulsory self-incrimination. *South Dakota v. Neville*, 459 U.S. 553, 74 L.Ed.2d 748, 103 S.Ct. 916 (1983). Our own "implied consent" statute has withstood attack on constitutional grounds. See *Lee v. State*, 187 Kan. 566, 571, 358 P.2d 765 (1961).

But the question of whether the accused enjoys a right to the presence of an attorney at the administration of the BAT itself is a far different one than whether the accused has a right to consult with an attorney before deciding whether to submit to the test. We do not this day hold that an accused has a right to have his attorney physically present at the taking of the BAT itself; we

hold only that an accused in a DUI case must be afforded a reasonable opportunity to consult with counsel prior to being required to submit to or refuse a BAT.

This brings us to one final concern voiced by the State. The fear is that persons accused of DUI will abuse their right to counsel in an effort to stall the administration of the BAT until such a time as their blood alcohol level had lowered significantly through normal physiological processes. We recognize that the human body assimilates any alcohol in the blood at a fairly rapid rate. This same scientific fact was foremost in the mind of the court in *People v. Gursey*, 22 N.Y.2d 224, 292 N.Y.S.2d 416, 239 N.E.2d 351 (1968), when it fashioned the following rule:

> "In light of current recognition of the importance of counsel in criminal proceedings affecting significant legal rights, law enforcement officials may not, without justification, prevent access between the criminal accused and his lawyer, available in person or by immediate telephone communication, if such access does not interfere unduly with the matter at hand. This court recently noted, in another context, that: 'As a matter of fairness, government ought not compel individuals to make binding decisions concerning their legal rights in the enforced absence of counsel.' (*People v. Ianniello*, 21 N Y 2d 418, 424; see *Escobedo v. Illinois*, 378 U.S. 478, 486; *People v. Donovan*, 13 N Y 2d 148, 153). . . .
>
> . . . .
>
> "The privilege of consulting with counsel concerning the exercise of legal rights should not, however, extend so far as to palpably impair or nullify the statutory procedure requiring drivers to choose between taking the test or losing their licenses. It is common knowledge that the human body dissipates alcohol rapidly . . . . Where the defendant wishes only to telephone his lawyer or consult with a lawyer present in the station house or immediately available there, no danger of delay is posed. But, to be sure, there can be no recognition of an absolute right to refuse the test until a lawyer reaches the scene (see *Matter of Finocchiaro v. Kelly*, 11 N Y 2d 58, 61 [VAN VOORHIS, J., concurring]). If the lawyer is not physically present and cannot be reached promptly by telephone or otherwise, the defendant may be required.to elect between taking the test and submitting to revocation of his license, without the aid of counsel." 22 N.Y.2d at 227-29.

And see also *People v. Rinaldi*, 107 Misc.2d 916, 436 N.Y.S.2d 156 (1981).

The right to counsel, we have announced today, must be understood as something of a limited right. The accused must be given a reasonable opportunity to contact and to consult with an attorney before being required to elect whether to consent to the administration of a BAT. In his exercise of his right to a reason- able opportunity to consult with counsel, the accused must also

act with reasonableness. He cannot be allowed to abuse the right in a manner which would unduly delay or unreasonably interfere with the administration of the BAT. Furthermore, vindication of this right does not necessarily require that the consulting attorney be face-to-face with the accused. Sometimes the accused will have to sacrifice a face-to-face consultation, and settle for telephonic communication, when the delay inherent in arranging a face-to-face meeting would unduly and unreasonably interfere with the administration of the BAT. However, in those cases where the attorney's presence can be secured without unreasonable delay, face-to-face consultations should not be prevented.

We deem it important to note that Kansas has always held that the lapse of time between the operation of a motor vehicle and the administration of a BAT does not reflect on the admissibility of the test results, but only goes to the weight of such evidence. See *State v. Parson,* 226 Kan. 491, 495, 601 P.2d 680 (1979). Therefore, any delays in the administration of a BAT which are not unreasonable should not be justification for denying the accused his right to consult with an attorney.

In summary, we do not herein hold that the defendant's attorney must be present when the BAT is administered. Neither do we hold that a defendant in every instance is entitled to consult with an attorney before he must make a choice as to whether to take the BAT or not. What we do hold is that the defendant must be afforded a reasonable opportunity to consult with an attorney as to whether or not to submit to the BAT. In the instant case, the defendant was not afforded any opportunity whatsoever to attempt to contact an attorney before making such choice. We are well aware that some defendants might, by their alleged desire to confer with counsel, attempt to postpone the BAT until sufficient time has elapsed for their blood alcohol level to diminish. There is no excuse, at all, however, in not allowing the defendant at least to attempt telephonic consultation with an attorney, or, where such can be done with reasonable expedition, to have his attorney come to the place of defendant's confinement for personal consultation. This is a matter that is not, in our opinion, susceptible to hard and fast rules or procedures, but is a matter within the sound discretion of the trial court when that court is faced with a decision as to whether

to suppress the results of such a test. It is clear that a decision on suppression must be made on a case by case method by the trial court. Where, as in the instant case, the trial court ordered suppression of the BAT results where no opportunity of any kind, and however brief, was afforded the defendant to confer with an attorney, it is clear to us, and we hold, that the trial court was correct.

Affirmed.

REES, J.: I dissent.

Defendant Randy Bristor stands charged of operating a vehicle while under the influence of alcohol (K.S.A. 8-1567), that is, DUI. On the ground of denial of the right to counsel guaranteed by the Sixth Amendment and made obligatory upon the states by the Fourteenth Amendment, the trial court suppressed the results of a blood alcohol breath test administered shortly after Bristor's arrest. The State appeals the suppression order.

On July 30, 1982, in Dodge City, Kansas, Highway Patrol Trooper Jim Brooks arrested Bristor for DUI. At the scene of his arrest, Bristor was given a field coordination test and his *Miranda* rights were read to him. Within twenty minutes after the arrest, Trooper Brooks had transported Bristor to the Dodge City Law Enforcement Center where, in accord with K.S.A. 8-1001, Brooks requested Bristor to take a breath test. Bristor asked to be allowed to telephone a lawyer before deciding whether to take the test. That permission was denied and Bristor consented to take the test. After providing a breath sample, he was allowed to call his lawyer.

Following his entry of a not guilty plea, Bristor moved to suppress the test result. The trial court sustained the motion ruling the test result had been obtained in violation of Bristor's Sixth Amendment right to counsel.

The State contends that, when an arrestee is confronted with an arresting officer's request to submit to a blood alcohol test, refusal to allow the arrestee advice of counsel prior to the arrestee's decision whether to refuse or accede to the request does not violate the Sixth Amendment right to counsel. Bristor argues that the decision whether to refuse or accede to the test request constitutionally requires advice of counsel.

Having examined a myriad of judicial opinions directly and

indirectly dealing with claims of entitlement to access to counsel in the context of so-called "implied consent" statutes, *e.g.,* K.S.A. 8-1001 *et seq.,* I find it imperative to note certain bounds of our review herein.

We are not concerned with application of statutory or court rule provisions for "early access" to counsel, that is, access to counsel before a constitutional right to counsel attaches, since Kansas has no such statutory or court rule provision. The judicial decisions to which we must look in determining the present controversy are those construing the Sixth Amendment right to counsel. *Kirby v. Illinois,* 406 U.S. 682, 688, 32 L.Ed.2d 411, 92 S.Ct. 1877 (1972). The case before us does not concern an administrative proceeding for suspension or revocation of driving privileges, a civil proceeding. It concerns a criminal prosecution. As conceded by Bristor's counsel, the question before us for review does not concern self-incrimination and the Fifth Amendment. *South Dakota v. Neville,* 459 U.S. 553, 74 L.Ed.2d 748, 753, 103 S.Ct. 916 (1983); *United States v. Wade,* 388 U.S. 218, 221, 18 L.Ed.2d 1149, 87 S.Ct. 1926 (1967); *Schmerber v. California,* 384 U.S. 757, 761, 16 L.Ed.2d 908, 86 S.Ct. 1826 (1966). Instead, the question is whether Bristor was denied his right "in [a] criminal [prosecution] . . . to have the Assistance of Counsel for his defence" as guaranteed by the Sixth Amendment to the United States Constitution. In particular, the question is whether Bristor had *any* Sixth Amendment right to counsel. We are not asked to and we need not decide the extent and nature of Bristor's right to counsel under the existing circumstances, that is, if Bristor were entitled to implementation of that right, what factually would have sufficed for there to have been compliance.

Despite all else said on appeal by the parties, in the cases they have cited and in the innumerable cases to which those cases lead in pursuit of the answer to the issue before us (for example, *State v. Jones,* 457 A.2d 1116 [Me. 1983]), the question boils down to this: Did the refusal of Bristor's request for permission to attempt to call a lawyer occur at a "critical stage of the prosecution"? This question is simply and directly answered by the United States Supreme Court decision in *Kirby v. Illinois,* 406 U.S. 682, a case stemming from a *post-arrest, pre-indictment* identification showup. It is dispositive of the case before us.

At issue in *Kirby* was identification of the time at which a person's Sixth Amendment right to counsel attaches. It is apparent that when deciding *Kirby* in 1972, the Supreme Court undertook review and harmonization of its earlier relevant decisions. Because the reader has already read the majority's direct quotation, I will reiterate the presently pertinent *Kirby* language in abbreviated fashion:

"[A] person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him. [Citations omitted.]

"[W]hile members of the Court have differed as to existence of the right to counsel in the contexts of some of the above cases, *all* of those cases have involved points of time at or after the initiation of adversary judicial criminal proceedings — whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.

"The only seeming deviation from this long line of constitutional decisions was *Escobedo v. Illinois,* 378 U.S. 478. But *Escobedo* is not apposite here . . . .

"The initiation of judicial criminal proceedings . . . marks the commencement of the 'criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable. . . .

"In this case we are asked to import into a routine police investigation an absolute constitutional guarantee historically and rationally applicable only after the onset of formal prosecutorial proceedings. We decline to do so. . . . '[A]n accused is entitled to counsel at any "critical stage of the *prosecution*" . . . a post-indictment lineup is such a "critical stage." ' (Emphasis supplied.) [Citation omitted.] We decline to depart from that rationale today by imposing a *per se* exclusionary rule upon testimony concerning an identification that took place long before the commencement of any prosecution whatever." (406 U.S. at 688-690.)

Lest there be any misunderstanding of Justice Stewart's plurality opinion, the dissenting opinion authored by Justice Brennan makes it clear by stating:

"The plurality apparently considers an arrest . . . not 'the starting point of our whole system of adversary criminal justice' . . . . An arrest, according to the plurality, does not face the accused 'with the prosecutorial forces of organized society,' nor immerse him 'in the intricacies of substantive and procedural criminal law.' Those consequences ensue, says the plurality, only with '[t]he initiation of judicial criminal proceedings' . . . ." *Kirby,* 406 U.S. at 698.

There can be no "critical stage of the prosecution" if no prosecution has begun. Bristor's Sixth Amendment right to counsel guarantee attached and applied only at and after the initiation of this criminal prosecution, *not before.*

The majority concludes that when Bristor was requested to

submit to a blood alcohol test "adversary judicial proceedings had commenced against defendant." Expression of the factual basis for this conclusion is found in the statements in the majority opinion that Bristor "had been ticketed by the arresting officer" and the officer "had prepared a complaint charging defendant with . . . DUI." I must respectfully disagree with both that conclusion and that factual recitation.

Our statutes directly prescribe how and when a criminal prosecution is commenced.

"Unless otherwise provided by law, a prosecution shall be commenced by filing a complaint with a magistrate." K.S.A. 22-2301(1).

"When an indictment is returned . . . a prosecution shall be deemed to have been begun." K.S.A. 22-2303(1).

"In misdemeanor cases a prosecution may be begun by filing an information in the district court." K.S.A. 22-2303(1).

"Whenever a person is halted by a police officer for any violation of any of the laws of this state regulating traffic on highways punishable as a misdemeanor and is not taken before a judge of the district court . . . the officer shall prepare a written traffic citation containing a notice to appear in court, the name and address of the person . . . the offense charged, the time and place when and where the person shall appear in court, and such other pertinent information as may be necessary . . . . The person charged with the violation may give written promise to appear in court by signing at least one copy of the written citation prepared by the officer . . . ." K.S.A. 8-2106(a), (d).

"In the event the form of citation provided for in K.S.A. 8-2106 includes information required by law *and is signed by the officer* preparing the same, then such citation *when filed with a court* having jurisdiction shall be deemed to be a lawful complaint for the purpose of prosecution . . . ." (Emphasis added.) K.S.A. 8-2108.

By itself, an arrest does not initiate a criminal prosecution, that is, adversary judicial criminal proceedings.

Included in the record on appeal are a copy of the "ticket" and a copy of the Ford County District Court's case jacket. The latter is the sole court record in the nature of an appearance docket. The earliest date appearing on the case jacket is "8/2/82." The "ticket" is the familiar Uniform Notice to Appear and Complaint form which has been completed so as to read as follows:

UNIFORM NOTICE TO APPEAR AND COMPLAINT

Kansas Highway Patrol No. 3082138

State of Kansas )
County of Ford ) ss.

In the District Court of Ford Co. the undersigned, being duly sworn, upon his oath deposes and says:
On the 30 day of July, 1982 at 2255
 (Time)
Name B R I S T O R
 Last
 Randy J.
 First Initial
Street Address Box 1194
City Dodge City State Ks.
Birth
date 07 31 58 Sex M Ht. 60 Wt. 155
Driv. Lic. No. B4F3K2 did upon a public highway, namely Highway No. U50, at milepost _____ or (other location) Wyatt Earp & Gardner, D. C. Ks. in the State of Kansas, County of Fo. unlawfully operate a vehicle to wit: . . . .
and did then and there commit the following offense
Other violations
 Driving while under the influence of an intoxicating liquor or beverage
Section 81567 Misdemeanor
Area Rural
Highway 2 lane
Officers
Signature Jim Brooks No. 55 County 29
Sworn to and
Subscribed before me this 2 day of Aug., 1982
 S. Cox
 Clerk
Appear before District at Dodge
 Name of Court City
On 9 day of Aug., 1982 at 10 AM I promise to appear in said court at said time and above for arraignment.
Signature Lodged Ford Co. Jail

The *only* other showing in the record which in any way relates to when Bristor was "ticketed" or when Brooks "had prepared a complaint charging defendant," is in the following testimony by Brooks at the evidentiary hearing on the motion to suppress:

"Q. Where in the Law Enforcement Center did you take Mr. Bristor upon arrival?

"A. . . . There's a room there - I - it's a squad room - that's what it is. . . . That's where he was taken was in that room there.

. . . .

"Q. All right, it's your testimony that he was placed in that room and I believe you used the figure of 20 minutes before the test was given, is that a true statement?

"A. Yes, sir. That's from the time we first observed him which would have been, I believe, *the ticket was written at 22 something hours.* It was a good - it was over 30 - at least 30 minutes. *I don't have my copy with me right now . . . if the Judge has it up there I can tell you the exact time* - close to it." (Emphasis added.)

In my view, the record evidence wholly fails to establish Bristor was "ticketed" or that Brooks "had prepared a complaint charging defendant" when the test request was made. The traffic citation bears no recitation of the time any part of it was written by Brooks. The "22 something hours" spoken of in Brooks' testimony is shown by the citation to be the time at which the offense allegedly occurred. There is no signature of Bristor acknowledging his promise to appear in court; for aught that appears from the citation, no copy of it was ever delivered to Bristor (the signature line for the promise to appear has the inserted words "Lodged Ford Co. Jail").

Perhaps the most important matter disclosed by the completed citation form is the district court clerk's signature attesting that Brooks signed the complaint before her on August 2, *three days after Bristor's arrest* and the events from which this appeal stems.

I find it beyond question that under our statutes this criminal prosecution was commenced no earlier than August 2, 1982. It was not until then that Brooks signed the citation and it was filed with the district court. See K.S.A. 8-2108 and K.S.A. 22-2301(1). The criminal prosecution of Bristor had not begun when any of the events on the night of July 30 transpired. The quoted testimony by Brooks is wholly inadequate to support a finding or conclusion that on the night of July 30 there existed a criminal prosecution so as to bring this case within the Sixth Amendment mandate that "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."

The majority opinion represents that in Minnesota, Missouri, New York, North Carolina, Ohio and Washington it has been

adjudicated that an arrestee for DUI has a right to the assistance of counsel prior to making the decision whether to refuse or accede to a proper request to submit to a blood alcohol test. With the exception of Minnesota and New York, the majority opinion cites no supporting authority. With the exception of New York, in each of the enumerated states, early access to counsel is provided for by state statute or court rule. See:

| | |
|---|---|
| Minnesota | — Minn. Stat. § 481.10 (1982); *Prideaux v. State, Dept. of Public Safety,* 310 Minn. 405, 415-423, 247 N.W.2d .385 (1976) (driver's license revocation proceeding; explicit refusal to decide the constitutional issue, 310 Minn. at 414.) |
| Missouri | — Mo. Rules of Court 37.89 (15th ed. 1984); *Gooch v. Spradling,* 523 S.W.2d 861, 865, (Mo. App. 1975) (driver's license revocation proceeding; single issue for decision was whether there was a refusal such as to invoke statutory sanction of license revocation; 523 S.W.2d at 863). |
| North Carolina | — N.C. Gen. Stat. § 15-47 (1965) (repealed 1973, now 15A-501 [1983]); *State v. Hill,* 277 N.C. 547, 552, 178 S.E.2d 462 (1971) (criminal prosecution for DUI). |
| Ohio | — Ohio Rev. Code Ann. §§ 2935.14, 2935.20 (Page 1982); *Dayton v. Nugent,* 25 Ohio Misc. 31, 37-39, 265 N.E.2d 826 (1970) (criminal prosecution for DUI); *McNulty v. Curry,* 42 Ohio St. 2d 341, 344-46, 328 N.E.2d 798 (1975) (criminal prosecution for DUI; constitutional right to counsel not applicable because consent decision not a "critical stage" of a "criminal prosecution"; compliance with *statutory* right to counsel). |
| Washington | — Wash. Rev. Code § JCrR 2.11 (1983); *State v. Fitzsimmons,* 93 Wash. 2d 436, 441, 449, 610 P.2d 893 (1980); *State v. Fitzsimmons,* 94 Wash. 2d 858, 620 P.2d 999 (1980); *Tacoma v. Myhre,* 32 Wash. App. 661, 664, |

648 P.2d 912 (1982) (criminal prosecutions for DUI).

From New York, there is the decision of that state's Court of Appeals in *People v. Gursey,* 22 N.Y.2d 224, 292 N.Y.S.2d 416, 239 N.E.2d 351 (1968). The *Gursey* opinion is quoted at some length by the majority. Within the bounds of our review I have previously described, to my knowledge *Gursey* is the only material authority which may be said to support the result reached by the majority. I cannot ascribe to *Gursey* precedential authority in the case before us. *Gursey* was decided four years prior to *Kirby.* I know of no reported New York decision wherein the effect of *Kirby* upon the decision in *Gursey* has been addressed. In *People v. Rinaldi,* 107 Misc. 2d 916, 436 N.Y.S.2d 156 (1981), the town court of the town of Chili, Monroe County, displays no consideration given by it to *Kirby* or any authority other than *Gursey.* As I see it, *Kirby* has overridden *Gursey.*

Other than *State v. Fitzsimmons,* 93 Wash. 2d 436, which I have spoken of above and which I will address later, and *Prideaux v. State, Dept. of Public Safety,* 310 Minn. 405, which I also have spoken of above, I do not find the "other cases" from other states which the majority says support their position.

The "rule" of *Kirby* has been acknowledged and applied in Kansas. *State v. Irving,* 231 Kan. 258, 262, 644 P.2d 389 (1982); *State v. Estes,* 216 Kan. 382, 385-86, 532 P.2d 1283 (1975); *State v. Jackson,* 212 Kan. 473, 473-74, 510 P.2d 1219 (1973); *State v. McCollum,* 211 Kan. 631, 637-38, 507 P.2d 196 (1973); *State v. Anderson,* 211 Kan. 148, 149, 505 P.2d 691 (1973); *State v. McConico,* 4 Kan. App. 2d 420, 426, 607 P.2d 93 (1980). From these, the majority finds sustenance in limited language appearing in *Irving* and *Estes.*

Within the majority's quotation from *Estes* appears the sentence, "At the time of the physical lineup the appellant by his own testimony admits he was not under arrest on charges upon which this appeal was taken." (216 Kan. at 386.) I am convinced the majority's reliance upon the three words "not under arrest" is unacceptably strained. Those words are but a part of the phrase "not under arrest on charges." I am satisfied that when all five words in the latter phrase are viewed in the context of the sentence in which they appear and the two preceding sentences, it is clear our Supreme Court was solely addressing the fact that

in that case there was no existing criminal prosecution as an incident to which Estes was under arrest.

Likewise, I find unacceptable reliance by the majority upon the word "arrested" in the language of *Irving.* The sentence from *Irving* containing the word "arrested" and appearing in the majority's quotation from that opinion is a verbatim repetition of a sentence in *United States v. Kenny,* 645 F.2d 1323, 1338 (9th Cir.), *cert. denied* 452 U.S. 920 (1981). In both *Irving* and *Kenny* no criminal prosecution had been commenced when the defendant was assertedly denied right to counsel. It was immaterial to either decision that the defendant was not under arrest; determination of whether defendant was under arrest was not necessary to either decision.

"What is said in an opinion or the syllabus thereof always is to be read and interpreted in the light of the facts and questions present in the case. [Citations omitted.] Otherwise, language meaningful for one case may erroneously become dogma for other cases despite essential differences. [Citations omitted.]" *State v. Reed,* 8 Kan. App. 2d 615, 623-624, 663 P.2d 680 (1983).

See also *Hartman v. Nordquist,* 8 Kan. App. 2d 213, 214-215, 653 P.2d 1199 (1982), and cases cited therein.

I find no post-*Kirby* authority holding any Sixth Amendment right to counsel attaches prior to initiation and commencement of criminal prosecution as identified in *Kirby* and which in this case would be the filing of a complaint or information. It follows that I find no authority to support the conclusion that when Bristor was requested to submit to a breath test there then was a "critical stage" entitling him to the Sixth Amendment guarantee of right to counsel. To the contrary, I find that right had not attached and we should conclude the order of suppression was erroneous.

I would be remiss if I failed to address *State v. Fitzsimmons,* 93 Wash. 2d 436, and *Heles v. State of S. D.,* 530 F. Supp. 646 (D. S.D. 1982), two opinions containing reasoning particularly attractive to me and, I take it, the other members of this panel. The *Fitzsimmons* opinion, which is referred to by the majority, contains significant discussion of constitutional considerations but, on remand from the United States Supreme Court, 449 U.S. 977, 66 L.Ed.2d 240, 101 S.Ct. 390 (1980), the Washington Supreme Court narrowed the basis for its decision to a state court rule, commenting that the constitutional analysis in its former

opinion was "persuasive," not dispositive. *State v. Fitzsimmons,* 94 Wash. 2d 858. *Heles* was appealed to the Eighth Circuit but the plaintiff died. The Eighth Circuit vacated the district court judgment and directed dismissal of the complaint as moot. 682 F.2d 201, 202 (8th Cir. 1982). Thus, that district court opinion and discussion cannot be accorded precedential value.

As a matter of personal philosophy, I join the majority in feeling that a person arrested for DUI who makes appropriate request should be allowed reasonable opportunity to attempt to contact a lawyer prior to deciding whether to submit to a blood alcohol test, but I am unable to find supporting Sixth Amendment authority. In fact, the authority is to the contrary.

Bristor makes an alternative argument to us that fair play requires he should have been allowed to attempt to contact a lawyer by telephone so long as it would not have caused a significant or obstructive delay in administration of the blood alcohol test. I interpret this to be a due process claim analogous to that mentioned in *Kirby* stemming from the due process clauses of the Fifth and Fourteenth Amendments. 406 U.S. at 691. We are disabled from consideration of this argument. The record on appeal fails to affirmatively disclose that in the trial court Bristor asserted a constitutional claim more broad than the Sixth Amendment claim. Applicability of the Sixth Amendment right to counsel is *the* issue upon which the trial court ruled. It is *the* issue before us for review.

I would reverse.