NOT DESIGNATED FOR PUBLICATION

No. 117,529

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of
J.L., J.L., and J.B.,
Minor Children.

MEMORANDUM OPINION

Appeal from Johnson District Court; NEIL B. FOTH, judge. Opinion filed March 9, 2018.
Affirmed.

*Richard P. Klein*, of Olathe, for appellant natural mother.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Ashlyn
Yarnell*, guardian ad litem, for appellee.

Before GARDNER, P.J., GREEN and SCHROEDER, JJ.

PER CURIAM: Mother appeals the district court's termination of her parental rights.
Finding no reversible error, we affirm.

*Factual and procedural background*

Mother has an extensive history with the Kansas Department for Children and
Families, including incidents in October and November of 2010; May of 2011; April and
September of 2012; and April, June, and September of 2013.

This case began in January 2014, shortly after J.B., the youngest of the three
children in this case, was born with Phencyclidine (PCP) in her system. The child in need

1

of care (CINC) petition alleged the following: Mother was involved in a one-car accident; Mother was taken to the hospital where she tested positive for PCP; Mother was transferred to a different hospital where she delivered J.B.; and J.B. tested positive for PCP. On this basis, Mother's three children who were living with her were taken into the custody of the State.

In March 2014, Mother did not contest that the children were children in need of care. In May 2014, Mother was placed on a six-month reintegration plan, and she received multiple extensions thereafter. At one point, the district court found that "mother is doing well on her reintegration and is making great strides towards the goal of reintegration." Trial was held in February 2017—three years after the children had been taken into State's custody. At that time, the children were ages 11, 9, and 3. Several caseworkers testified as to Mother's progress during the case. The original caseworker testified on Mother's behalf.

The district court terminated the parental rights of Mother, identifying her continued use of PCP as the major factor. Mother's continued use was presumed because she submitted very few UAs, despite having been repeatedly warned by the court and caseworkers that a missed UA would be considered a positive UA. Mother appeals, challenging the finding of unfitness.

*Did the district court err in finding that mother was unfit based on her presumed continued drug use and that the unfitness was unlikely to change in the foreseeable future?*

*Standard of Review*

Because a parent has a fundamental liberty interest in the relationship with his or her child, the State must prove the allegations of conduct that form the basis for termination by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769-70,

102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008). In applying this standard, we review a district court's decision to terminate a parent's rights by asking whether a rational fact-finder could have found it highly probable that the parent's rights should be terminated. 286 Kan. at 698. We review the evidence in the light most favorable to the State. In reviewing the district court's decision, we may not reweigh the evidence, reconsider the credibility of witnesses, or redetermine factual questions. 286 Kan. at 705.

*Discussion*

To terminate parental rights, a district court must find by clear and convincing evidence that a parent is unfit by reason of conduct or condition which renders the parent unable to properly care for his or her child, that the conduct or condition is unlikely to change in the foreseeable future, and that termination of parental rights is in the child's best interests. K.S.A. 2017 Supp. 38-2269(a), (g)(1). The statute provides nine bases upon which to make this determination, and four additional bases if the child has been in an out-of-home placement for an extended time. The existence of any one of the statutory bases standing alone may, but does not necessarily, establish grounds for termination of parental rights. K.S.A. 2017 Supp. 38-2269(f).

A. *Present Unfitness*

The district court stated five statutory bases for finding Mother unfit and identified Mother's drug use as the primary reason underlying each basis: K.S.A. 2017 Supp. 38-2269(b)(1), physical or mental illness; K.S.A. 2017 Supp. 38-2269(b)(3), use of dangerous drugs; K.S.A. 2017 Supp. 38-2269(b)(7), failure of reasonable efforts to rehabilitate the family; K.S.A. 2017 Supp. 38-2269(b)(8), lack of effort by the parent to adjust the parent's conduct or condition to meet the needs of the children; and K.S.A.

2017 Supp. 38-2269(c)(3), failure to carry out a reasonable reintegration plan while the children were in extended out-of-home placement.

*Mother's failure to adjust her conduct*

We first address the district court's finding that Mother is unfit because of "lack of effort on the part of the parent to adjust the parent's circumstances, conduct or conditions to meet the needs of the child." K.S.A. 2017 Supp. 38-2269(b)(8).

Caseworkers stressed to Mother that it was critical that she address her substance abuse issues and submit to UAs to prove sobriety. The caseworkers and the court advised her that any missed UAs would be considered a positive test result. However, between January 2014 and the termination hearing in February 2017, Mother submitted only a handful of UAs. In 2015, Mother was placed on a color code system in which she was required to call in to find out if her assigned color had been selected to test that day. While caseworker Julie Magana was on the case, Mother should have submitted 36 UAs, but only submitted three. These were negative and were submitted during a three-week period in December 2015 and January 2016, leading up to the original permanency hearing date in February 2016. When a different caseworker was on the case, Mother was required to submit to four UAs a month on the color code system. Yet Mother did not take any of the roughly 32 UAs called for by the system, but took 2 UAs in August 2016. In closing argument, the attorney for the State opined that in his 27 years of experience it was the most missed UAs he had seen.

Mother entered drug treatment twice during the case. In June or July 2014, she entered inpatient drug treatment at Mirror, Inc., but was kicked out in early July because of issues with the treatment staff. In late December 2016, Mother took an assessment at Regional Alcohol & Drug Assessment Center and entered outpatient drug treatment at

Mirror, Inc., in late December or early January 2017, just before the final trial date in February.

Mother's explanation for missing the UAs was that she could not drive to the test sites because she had a suspended driver's license so she had to rely on taxis or friends. KVC offered Mother bus passes but she refused to ride the bus, saying it made her anxious. When Mother asked for gas vouchers in 2014, the KVC supervisor initially declined the request but later told Mother she would be given vouchers if she proved someone else was driving. Mother was ultimately given two gas vouchers. Evidence showed that Mother had been jailed in October 2016 for six days on a traffic warrant. One caseworker had seen Mother driving, despite having a suspended license, on three occasions.

We are not unsympathetic to the difficulty of finding transportation. However, Mother's failure to show up for more than 50 tests is not excusable on this basis. Mother found other transportation at times, and the responsibility to pay outstanding tickets and to obtain a valid driver's license rested within Mother's hands—not someone else's.

Mother also wanted KVC to provide UAs free of charge. Caseworkers carry UA kits so that they can perform UAs at visits. Mother was permitted to test in her home on one occasion, but the caseworker was outside the home and received an anonymous phone call that caused her to question the validity of the result. Sometime thereafter, KVC began rationing the test kits among the teams, giving the teams the discretion to determine which clients to use them with. Mother's caseworker chose not to use the kits with Mother. In response to Mother's requests to be tested at a lab closer to her home, KVC moved the test site three times, although each was several miles from her home. The test site was moved to Mirror, Inc., a substance abuse treatment center 1.5 miles from her home, in December 2016, after Mother started drug treatment there.

Mother did not change her condition—addiction; her conduct—using drugs and not showing up for drug tests; or her circumstances—failing to obtain transportation, not obtaining a valid driver's license, and not making further efforts to find a workable test location. In short, she demonstrated a lack of effort on the tasks essential to obtain reintegration of her children. Clear and convincing evidence thus shows Mother is unfit pursuant to K.S.A. 2017 Supp. 38-2269(b)(8).

*Mother's use of dangerous drugs*

The statute also permits the district court to find a parent unfit if "the use of intoxicating liquors or narcotic or dangerous drugs [is] of such duration or nature as to render the parent unable to care for the ongoing physical, mental or emotional needs of the child." K.S.A. 2017 Supp. 38-2269(b)(3).

Mother first contends that the only factual finding the district court relied on to conclude that drug use interfered with her ability to parent her children was not proved at trial. That factual finding was the CINC petition's allegation that Mother had tested positive for marijuana and PCP after being in a single-vehicle accident when nine months' pregnant with J.B. Mother is correct that no evidence was presented at trial that Mother was high on PCP at the time of her accident. But the fact that J.B. tested positive for PCP when she was born was proved by uncontroverted testimony, and a caseworker testified that J.B. was receiving Infant-Toddler Services because she had developmental delays attributed to that drug exposure. The evidence thus showed that Mother exposed J.B. to PCP before birth. Exposing a child to PCP before birth is harm related to the mother's drug use. See *In re J.W.*, No. 106,561, 2012 WL 2621154, at *7 (Kan. App. 2012) (unpublished opinion) (finding prenatal exposure to cocaine to be an adequate basis for termination of mother's parental rights).

6

Mother next contends that the State must provide direct evidence of a causal link between a parent's drug use and harm to the child. We disagree. The State is not required to prove by direct evidence that Mother's conduct was due to her drug use. Any material facts may be proved by direct testimony, by indirect or circumstantial evidence, or by a combination of both. See *State v. Tillery*, 227 Kan. 342, 346, 606 P.2d 1031 (1980); *State v. Higdon*, 224 Kan. 720, 723, 585 P.2d 1048 (1978). No exclusive mode of proof of the factors supporting termination is prescribed by law. In *In re C.A.G.-V.*, No. 113,334, 2015 WL 5224828 (Kan. App. 2015) (unpublished opinion), we found: "While there may not be direct evidence that Father's drug use was in and of itself harmful to C.A.G.-V., there is clear and convincing evidence that Father's failure to acknowledge his drug issues created a significant impediment towards reintegration." 2015 WL 5224828, at *4. The same is true here, as discussed above. Mother was repeatedly warned that her chances of reintegration were dependent on her submitting to UAs, but she consistently failed to do so.

Mother next contends that she is not as poor a parent as some others whose rights have been terminated. See *In re K.H. and C.J.*, No. 106,322, 2012 WL 687975 (Kan. App. 2012) (unpublished opinion). We commend Mother for her ability to maintain stable housing and income, and for her positive interactions with her children during her supervised visits, unlike some whose parental rights are terminated, but these factual distinctions do not preclude termination on another basis. Mother had two sources of income but did not allocate her funds for transportation so she could attend drug treatment or take UAs.

Mother next argues that a parent's drug addiction, standing alone, is an insufficient ground upon which to terminate parental rights. To support this assertion, she cites three cases from other states, including *In re S.F.*, 22 So. 3d 650, 653 (Fla. Dist. Ct. App. 2009), and *In re A.T.E.*, 222 P.3d 142 (Wyo. 2009). But those cases are not persuasive because the statutes in those other states differ significantly from ours, and their facts are

7

distinguishable. Our statute provides that the existence of any one of the statutory bases standing alone may establish grounds for termination of parental rights. K.S.A. 2017 Supp. 38-2269(f). Drug use is one such statutory basis.

In Kansas, termination may be based on "the use of . . . dangerous drugs of such duration or nature as to render the parent unable to care for the ongoing physical, mental or emotional needs of the child." K.S.A. 2017 Supp. 38-2269(b)(3). Mother delivered a child with PCP in its system, had several positive drug tests for PCP, missed many required drug tests, continued to drive without a valid license, and failed to complete important requirements of her reintegration plan. The district court found that Mother failed to demonstrate sobriety even though she was repeatedly told that it was essential to recovering her children. The facts of record thus show that Mother's use of PCP, a dangerous drug, was lengthy in duration and was of such a nature as to render her unable to care for the ongoing needs of her children.

Mother also argues that it was improper for the district court to take judicial notice of the effects of PCP. The district court listed some of the effects of PCP ingestion and found that some of Mother's actions testified to by caseworkers were consistent with PCP use. Mother specifically contends that the district court committed reversible error by relying on its own knowledge of specific effects of PCP because such information falls outside the scope of allowable judicial notice. But Mother fails to cite any authority to show taking judicial notice was error, let alone reversible error. Failure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue. *University of Kan. Hosp. Auth. v. Board of Comm'rs of Unified Gov't*, 301 Kan. 993, 1001, 348 P.3d 602 (2015). We deem this issue to be waived or abandoned because it was not sufficiently briefed. *Superior Boiler Works, Inc. v. Kimball*, 292 Kan. 885, 889, 259 P.3d 676 (2011).

8

We find clear and convincing evidence of Mother's unfitness under K.S.A. 2017 Supp. 38-2269(b)(3). We find it unnecessary to address the district court's findings that Mother was unfit based on her failure to carry out a reasonable reintegration plan while children were in extended out-of-home placement, the failure of reasonable efforts by KVC to rehabilitate the family, and by Mother's and physical or mental illness or disability. Having found clear and convincing evidence of unfitness under K.S.A. 2017 Supp. 38-2269(b)(3) and K.S.A. 2017 Supp. 38-2269(b)(8), we now determine whether clear and convincing evidence also shows that Mother is unlikely to change in the foreseeable future.

B. *Likelihood of change in the foreseeable future*

Once a parent has been found presently unfit, the district court must also find that the unfitness is unlikely to change in the foreseeable future. K.S.A. 2017 Supp. 38-2269(a). Mother was given multiple extensions on her reintegration plan. Trial was originally set for February 2016—25 months after the children were brought into custody. Mother was granted a continuance of the trial date because of a medical condition. Ultimately, trial was held in February 2017—37 months after the children were brought into custody. Although Mother entered drug treatment just before the termination hearing, we are not convinced that she will complete it, having shown no interest in pursuing treatment since being kicked out a program in July 2014. It is too little, too late.

A parent's past behavior is a strong factor in predicting future behavior. See *In re Price*, 7 Kan. App. 2d 477, 483, 644 P.2d 467 (1982). What constitutes the "foreseeable" future must be considered from a child's perspective, not the parent's, because the time perception of a child differs from that of an adult. *In re S.D.*, 41 Kan. App. 2d 780, 790, 204 P.3d 1182 (2009). Children deserve to have a final resolution within a time frame that is appropriate from their sense of time. *In re A.A.*, 38 Kan. App. 2d 1100, 1105, 176

9

P.3d 237 (2008). This case was open for three years before the final termination hearing, which is a long time even in "adult time." J.B. was in State's custody her entire life. Mother's failure to demonstrate change in that time gives us confidence that a reasonable fact-finder would find it highly probable that she would not change in the foreseeable future.

*Did the district court abuse its discretion in finding that termination of Mother's parental rights was in the best interests of the children?*

*Standard of Review*

We review the district court's determination of best interests of the child for abuse of discretion, which occurs when no reasonable person would agree with the district court or the district court premises its decision on a factual or legal error. *In re R.S.*, 50 Kan. App. 2d 1105, Syl. ¶ 2, 336 P.3d 903 (2014).

*Discussion*

K.S.A. 2017 Supp. 38-2269(g)(1) requires the court to give "primary consideration to the physical, mental and emotional health of the child" in making the best-interests decision. It is appropriate to consider the special needs of the children when making a determination of unfitness or best interests. See, e.g., *In the Interest of M.V.J.*, No. 117,401, 2017 WL 5184341, at *5 (Kan. App. 2017) (unpublished opinion) (finding the "especially pronounced needs" of the child required "nearly constant attentiveness" from her caregivers, a level of care that mother could not provide); *In re J.E.*, No. 110,368, 2014 WL 1612620 (Kan. App. 2014) (unpublished opinion) (considering the special needs of the child in determining that father's drug use impacted his ability to parent and that termination was in the best interests of the child).

All three children here have significant needs. J.L. has been diagnosed with ADHD, disruptive behavior disorder, and a mild intellectual disability. One child has asthma and requires consistent breathing treatments. The foster mother to J.L. and J.B., who holds a master's degree in social work and is a crisis therapist and part-time KVC case manager in another county, testified that J.L. required two to three times more time and attention compared to other eight or nine-year-old children she had fostered. J.L. has biweekly therapy appointments and takes five medications three times a day. J.B. has behavioral and cognitive delays attributed to the PCP exposure and attends preschool under an individualized education plan. The district court found that Mother would likely be unable to consistently dispense the children's medications or provide transportation for appointments. The record amply supports those findings.

The district court articulated sound reasons for its best interests decision and based its decision on facts of record and the governing law. A reasonable person could agree that termination of Mother's parental rights is in the best interests of the children; thus, the district court did not err in finding her unfit.

Affirmed.